# Ex parte The State of Alabama, in re Mohr.

*Application for Mandamus.*

1. *Extradition of fugitive from justice; party authorized to make demand for, not an agent of Federal Government.*—A party authorized and appointed by the Governor of another State, to demand of the Governor of this State the arrest and extradition of a person here as a fugitive from justice, under a requisition duly made for that purpose, is not, *pro hac vice,* an officer or agent of the Federal Government, but is merely an agent of the State demanding the extradition, although the authority for the demand and requisition is the act of Congress passed for the enforcement of the extradition clause of the Federal Constitution.

2. *Same; jurisdiction of State courts to inquire into legality of arrest by habeas corpus.*—The person sought to be extradited having been arrested under a warrant issued by the Governor, in pursuance of the requisition made on him, and placed in the custody of the agent of the State demanding the extradition, the State courts have jurisdiction, by writ of *habeas corpus,* to inquire into and determine the legality of the arrest and detention.

3. *Same; what criminals may be extradited under Constitution and act of Congress.*—The extradition clause of the Federal Constitution, and the act of Congress designed to carry it into effect (U. S. Stat. § 5278), do not provide for the extradition of all criminals, but of a specified class only—of such as may have fled from, or left the demanding State as fugitives from the justice of that State; and hence, their provisions do not apply to, or embrace crimes, not *actually,* but merely *constructively* committed within the jurisdiction of the demanding State, when the offenders were not, at the time the crimes were committed, and have not since been, within that jurisdiction.

4. *Same; what questions open for review on writ of habeas corpus.* While the act of 1793, now substantially embraced in section 5278 of the Rev. Statutes, providing for the extradition of fugitives from justice, makes conclusive the production of a duly certified copy of the indictment or affidavit therein mentioned, and the courts of the State on which the requisition is made, are not authorized to go behind the indictment or affidavit for the purpose of investigating the question of the prisoner's guilt or innocence, the finding of the Governor of that State, that the

[Ex parte The State of Alabama, in re Mohr.]

person whose extradition is demanded, is a fugitive from justice, is not conclusive evidence of that fact; but it is competent for the prisoner to show, on *habeas corpus*, by parol evidence, that he is not in fact a fugitive from the demanding State, and that, therefore, the warrant of the Governor was improvidently issued.

5. *Same.*—Hence, a person arrested as a fugitive from justice on a warrant issued by the Governor of this State, in pursuance of a requisition made on him by the Governor of the State of Pennsylvania, based on an indictment found in that State, charging the prisoner with the crime of obtaining money under false pretenses, may show, on *habeas corpus*, that he was not in the State of Pennsylvania at the time the offense is alleged to have been committed, and has never been there since; that the goods were obtained by purchase from an agent of the prosecutor in the State of New York, to whom the false representations, if any, were made; and that he has never fled from the State of Pennsylvania, and was, therefore, not a fugitive from justice.

Application to this court for mandamus, prohibition, or other remedial writ, to be directed to Hon. F. C. RANDOLPH, Judge of Probate of Montgomery county, commanding him to vacate, annul and set aside an order made by him, discharging, on *habeas corpus*, Alex. Mohr from the custody of one Frederick Gentner, who held him under and in pursuance of a warrant of the Governor of the State of Alabama, issued on a requisition made by the Governor of the State of Pennsylvania, for extradition.

The facts are stated in the opinion.

RICE & WILEY, for petitioner. (1) The authorities are unbroken to sustain the general doctrine, that when the executive warrant for the delivery of an alleged fugitive 1 as been issued in conformity with law, it is not the province of the courts, by the writ of *habeas corpus*, to arrest or defeat its operation by the discharge of the prisoner. The accused, if he has any remedy or defense, must seek and assert it in the State to which he has been surrendered. The question whether the party demanded shall be arrested and delivered up, is, under the laws of Congress, and of Alabama, submitted exclusively to the Executive to whom the demand is addressed. No court has any thing to do with the question, unless, perhaps, the proceedings in the case show some want of conformity to law— some defect in the matter of form or substance.—Spear on Extradition, pp. 240–2, 282, 301–2; *In re Greenough*, 31 Vt. 288; *Ex parte Voorhees*, 3 Vroom (N. J.), 147; *In the matter of Clark*, 9 Wend. 212; Sergt. on Con. Law, pp. 395–6; *Brown's case*, 112 Mass. 409; *Robinson v. Flanders*, 29 Ind. 10; *In re Manchester*, 5 Cal. (Morris) 237; Hurd on *Habeas Corpus*, 603, 611–12, 621; 4 Harr. (Del.) 577; *Kingsbury's case*, 106 Mass. 223; *Taylor v. Taintor*, 16 Wall. 366; *Kentucky v. Dennison*, 24 How. 106; *Prigg v. Pennsylvania*, 16

[Ex parte The State of Alabama, in re Mohr.]

Pet. 539.   (2) Gentner, while acting as agent of the executive authority of Pennsylvania, was also discharging a duty imposed upon him under the Constitution and laws of the United States, relating to the extradition of fugitives, and was, in fact, endeavoring to execute a law of Congress, passed for the express purpose of giving effect to rights, as between themselves, of the several States of the American Union, under the Federal Constitution.   The Governor of this State, in issuing his warrant, and Gentner, in executing it, were, *pro hac vice*, officers of the United States ; and, therefore, the State courts have no jurisdiction to release the alleged fugitive on *habeas corpus.*—*In re Robb*, in the Circuit Court of the United States, District of California, opinion in pamphlet ; *Ex parte Hill*, 38 Ala. 431.   See also *Prigg's case*, 16 Pet. 539 ; *Ableman v. Booth*, 21 How. 509 ; *Tarble's case*, 13 Wall. 397 ; *Ex parte Gist*, 26 Ala. 156 ; *Ex parte Lee & Allen*, 39 Ala. 459 ; *Kentucky v. Dennison*, 24 How. 106 ; Code of 1876, §§ 3977, 4957 ; *Ex parte Bushnell*, 9 Ohio St. 183.   (3) Section 3977 of the Code of 1876 made it mandatory upon the Governor to issue his warrant, in this case, for Mohr's arrest.   Section 4957 of same Code makes it imperative upon a State judge to *remand* Mohr to the custody from which he was taken.

W. L. BRAGG, R. M. WILLIAMSON and J. N. ARRINGTON, *contra.*   (1) The following constitutional provisions and statutory enactments reviewed, as bearing on the extradition of fugitives : Con. U. S. Art. 4, sec. 2, subd. 2 ; Rev. Statutes U. S., § 5278 ; Code of Alabama, 1876, §§ 3977–80, 3987, 4936, 4955, 4957.   (2) The question involved in this case turns upon the construction of these constitutional and statutory provisions.   The provisions of the Federal Constitution, as well as of the act of Congress, contemplate that a person, to be arrested, must have committed a crime in the territory of the State demanding him, and must have *actually fled* from *the justice of that State*, or there must be a *substantial equivalent of such actual flight.*   The facts last recited constitute a *prerequisite* of the right of any one State to lawfully demand from another State the giving up of any person, to be transported for trial to the State making the demand.   If these facts do not *exist*, then there is no right to the requisition, under either the Constitution or laws of the United States. Spear on the Law of Extradition, pp. 271–5, 306–17, and authorities cited ; *Ex parte Smith*, 3 McLean, 121.   (3) The only question tried by the judge of probate in the court below was, whether or not Mohr was *a fugitive from justice.*   It will be observed that the crime charged in the indictment is one which could be *constructively committed ;* that is to say, Mohr

[Ex parte The State of Alabama, in re Mohr.]

could have made the false pretenses by letter written and mailed outside of the State of Pennsylvania, and upon them could have obtained the goods mentioned in the indictment, without ever having entered the territory of that State. Neither the indictment nor any of the other papers upon which the warrant was issued, charges the fact that Mohr was in the State of Pennsylvania at the time he committed the alleged offense; nor do the papers charge that he had actually fled from that State to avoid its justice, or facts which are, in effect, a substantial equivalent of such flight. The averment that he is "a fugitive from justice," contained in the affidavit, is a mere conclusion of the affiant, and insufficient. This being so, the Governor ought not to have issued his warrant. But even if, upon these facts, the Governor, *a mere ministerial officer, performing ministerial duties,* ought to have issued the warrant, then it is equally true, that the judge of probate, on *habeas corpus,* had jurisdiction, upon these facts, to inquire whether Mohr *actually was in the State of Pennsylvania* at the time the offense was committed, or whether he did *actually flee from the justice of that State, or had done any other act that was the substantial equivalent of such flight.* This point elaborated. (4) None of the cases cited by the counsel for the petitioner, Gentner, lay down the rule of law to be, that the actual flight or its substantial equivalent, from the justice of the State making the demand, is not an *absolute and indispensable prerequisite to be established before the accused can be given up for trial by the State upon which the demand is made.* A careful examination of each of these cases will show that the point made in the present case is nowhere made in them, and that there was no occasion for its being made upon *the evidence* in either of those cases. Those cases went off upon considerations entirely different. There have been, however, very important cases, in which this point was made and considered with favor by eminent courts.—See *Ex parte Jos. Smith, the Mormon Prophet,* 3 McLean, 121; *State of South Carolina v. Senator Patterson,* reported in Spear on Extradition, p. 275; *Jones & Atkinson v. Leonard,* 50 Iowa, 106; *Manchester's case,* 5 Cal. 237; *Story's case,* 3 Cen. Law Journal, p. 636; Opinions of the Attorneys-General, Vol. 8, p. 215. (5) This extradition statute of the United States is a penal statute, and greatly in derogation of the common law rights of the citizen. As such, it should be strictly construed. — See *Ex parte Jos. Smith, Mormon Prophet,* 3 McLean, 121. It is also *a summary proceeding,* and the statute itself provides for it in *a summary manner;* and, as such, it must *be strictly complied with.* See Spear on Extradition, pp. 269–70. It can not be said that such a statute would be "legally applied," if under these pro-

visions a citizen was arrested and extradited on account of a crime *constructively* committed and *flight constructively made.* Under such a statute, involving such tremendous consequences to a citizen, in the essence of liberty and a fair trial, rendering it necessary that he should be transported to a foreign State to be tried among strangers upon a criminal accusation, are the courts of the State upon which the demand is made, compelled to shut their eyes to all else except merely the papers in the requisition of the Governor making the demand, and the accompanying papers, as to whether or not the person demanded is, or is not "a fugitive from justice?" Such can not be the law. As the principle contended for on behalf of Mohr involves the highest rights of the citizen, we insist that, in a proceeding of *habeas corpus,* the courts of this State should uphold and maintain it for the protection of the citizen. (6) The matter of extradition is left by the act of Congress to be carried out and enforced, in every instance, by the States themselves, and by *the officers of the States, as such, and acting as such.* See *Kentucky v. Dennison,* 24 How. 66. *Robb's case,* cited by counsel for petitioner, criticised; and it is insisted that the decision does not lay down a sound and correct rule upon this point, or one that can be safely followed by the courts. (7) Cases of crime *constructively committed,* and of *flight constructively made,* are not provided for, either in the Constitution, or the laws of the United States; and this being true, it is the duty of the State courts, in a proceeding of *habeas corpus,* to take evidence, examine into the facts, and ascertain judicially, whether the accused is a fugitive from justice, as contemplated by the Constitution and laws of the United States, by having actually fled from the State demanding him, or what is the substantial equivalent of such actual flight; or whether his pretended flight is merely *constructively committed.*

SOMERVILLE, J.—The purpose of the present application is to vacate the action of the probate judge, discharging one Alexander Mohr from alleged illegal custody, on his petition for the writ of *habeas corpus.* The return to the writ showed that the petitioner was held in the custody of the relator, Frederick Gentner, as agent of the State of Pennsylvania, under a warrant of arrest issued by authority of the Governor of Alabama, pursuant to a requisition from the Governor of the former State, demanding his extradition as a fugitive from justice. The crime charged is that of obtaining goods by false pretenses. The probate judge permitted evidence to be introduced, showing that the prisoner was not in the State of Pennsylvania at the time of the commission of the alleged offense, and had never been there since; that the goods were obtained

by purchase from an agent of the prosecutor in the State of New York, to whom the false representations, if any, were made, and that the petitioner had never fled from the State of Pennsylvania, and *was not a fugitive from justice.* It is claimed that the State courts have no jurisdiction of the case, and if so, that the probate judge had no jurisdiction to go behind the warrant of the Executive, to investigate the question as to whether or not the prisoner was in fact a fugitive from justice; and that the proceedings before him were *coram non judice* and void.

The questions thus raised for our consideration involve a construction of the clause in the Federal Constitution relating to the extradition of fugitive criminals between the several States, and of the law of Congress enacted for the purpose of its enforcement.

The Constitution of the United States provides, that "a person charged in any State with treason, felony, or other crime, *who shall flee from justice,* and be found in another State, shall, on demand of the executive authority of the State *from which he fled,* be delivered up, to be removed to the State having jurisdiction of the crime."—Art. IV, sec. 2.

The act of Congress designed to carry this constitutional provision into effect, was passed in the year 1793, and is found substantially embraced in section 5278 of the Revised Statutes of the United States. It provides that "whenever the executive authority of any State or Territory demands any person, as a fugitive from justice, of the executive authority of any State or Territory *to which such person has fled,* and produces a copy of an indictment found, or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor, of chief magistrate of the State or Territory from whence the person so charged *has fled,* it shall be the duty of the executive authority of the State or Territory *to which such person has fled,* to cause him to be arrested and secured," and to be delivered up to the "agent" of the demanding State or Territory.—Rev. Stat. U. S. § 5278.

The General Assembly has seen fit to enact statutes in this State which are designed to be in aid of this Congressional legislation, and impose the duty of extradition upon the Governor in all cases falling within the purview of the Federal Constitution.—Code, 1876, §§ 3977–3990. It is needless that we should refer to these in detail.

It is not denied that the great function of the writ of *habeas corpus* is the liberation of those who may be imprisoned without just authority of law. But it is contended that this is a case of which the State courts have no jurisdiction, because

the petitioner is shown to have been in the custody of one holding him under the authority of the laws of the United States, and who must be regarded as acting *pro hac vice* as an officer or agent of the Federal Government. The argument seeks to bring this case within the principle settled in *Tarble's case*, 13 Wall. 397, decided by the Supreme Court of the United States in 1871, and holding that no judicial officer of a State has jurisdiction to issue a writ of *habeas corpus* for the discharge of any person "held under the authority, or claim and color of the authority, of the United States, by *an officer of that government.*" The petitioner in that case was an enlisted soldier, in the army of the United States, who sought to be discharged from the custody of a recruiting officer of the Federal Government. The same principle had been virtually settled in *Booth's case*, 21 How. (U. S.) 506, decided in the year 1858, a decision involving the validity of proceedings under the Fugitive Slave Law.·

The present case does not, in our judgment, come within the scope of the above principle, or the reason upon which it is based, which is to prevent a conflict of jurisdiction tending to a forcible collision between the State and Federal Governments. *Tarble's case, supra; Ex parte, LeBur*, 49 Cal. 159 ; Code, 1876, § 4936. The relator, Gentner, in whose custody the petitioner was shown to be, was not an officer or agent of the Federal Government. He was the agent of the State of Pennsylvania, whose Executive had empowered him to make this demand upon the executive authority of this State. . It is no answer that the authority is exercised in obedience to an act of Congress, passed for the enforcement of the extradition clause of the Federal Constitution. This provision has been well said to be in the nature of "a treaty stipulation between the States of the Union," as binding upon the States as though it was a part of the Constitution of each State.—*Hibler v. The State*, 43 Tex. 197. But in *Kentucky v. Dennison*, 24 How. 66, it was said that if the Governor of a State declined to surrender a fugitive criminal on the requisition of the Governor of a sister State, the Federal Government had no constitutional power "to use any coercive means to compel him." It was further asserted that this duty was "merely ministerial—that is, to cause the party to be arrested and delivered to the agent or authority of the State where the crime was committed." In *Taylor v. Taintor*, 16 Wall. 366, the duty to deliver or surrender was pronounced to be one "not absolute and unqualified," but dependent upon "the circumstances of the case." As there said, "in such cases the Governor acts in his official capacity, and represents the sovereignty of the State." Possibly this executive duty may be regarded as quasi-judicial in some of its·

aspects, but this, in our view, is not necessarily material in its bearing upon the question before us.    The State has seen fit to legislate in aid of this Congressional legislation, rendering, perhaps, the duty of the Executive one of more perfect obligation, if possible.—Code, § 3977–78.    And while it was said by Mr. Justice Story, in *Prigg v. Commonwealth of Pennsylvania*, 16 Pet. 539, that such State legislation was prohibited by implication, as to matters in reference to which Congress has already legislated, it seems now to be the better opinion that, where State laws on this subject are not repugnant, but auxiliary to those passed by Congress, they may be upheld upon the principle of the right to exercise the power of domestic police.—Bish. Cr. Proc. § 223 ; Spear on Extradition, 267 ; Hurd on Hab. Corp. 633–36 ; *Work v. Corrington*, 32 Amer. Rep. 345.    Congress has not designated the practice or mode of procedure by which the fugitive is to be arrested and secured, and as to this there can be no valid objection to State legislation.    It is merely providing "adequate means and facilities for the accomplishment of such extradition."—*Ex parte Ammons*, 34 Ohio St. 518 ; *Coffman v. Keightley*, 24 Ind. 509.    However this may be, we are of opinion that Gentner was not the agent of the general government in any proper or legal sense, but of the executive authority of the State which made the demand for Mohr's extradition.—*Ex parte Gist*, 26 Ala. 156, 164.    It has long been the general, if not universal practice of the State courts to exercise jurisdiction in such cases, by issuing writs of *habeas corpus*, in order to test the legality of the imprisonment. This jurisdiction is expressly recognized by section 4957 of the Code, and may now be considered as fully established, upon unassailable grounds, throughout the various States.    This court does not aspire to the ambition of being the first, and perhaps only one of the State tribunals of last resort, to assail or deny a jurisdiction which is not only just to the constitutional sovereignty of the States, but favorable to the preservation of the citizen's liberty ; and which is, at the same time, otherwise so salutary in its juridical influences, as well as honorable in its antiquity.—Spear's Law of Extrad. 297–306 ; Cooley's Const. Lim. (5th Ed.) *16, *note* 1 ; Hurd on Hab. Corp. 621–632 ; Rorer on Inter-State Law, 223 ; Whart. Cr. Pl. & Pr. (8th Ed.) § 35 ; Code of Alabama, 1876, § 4936 ; *Com. v. Hall*, 9 Gray, 262 ; *Ex parte* Thornton, 9 Tex. 635.

We encounter more difficulty in the solution of the other question presented.    Is it permissible to show that the case is not one coming within the provisions of the Constitution and act of Congress, because the party charged is not a fugitive from justice, having committed the alleged offense, if at all, only constructively while outside of the territorial jurisdiction of the

demanding State? Or are the papers in the case, in connection with the warrant of arrest issued by the Governor of this State, to be regarded as importing absolute verity in this particular, so as to be incapable of contradiction?

The statute provides that, if the return to the writ of *habeas corpus* shows that the petitioner is "in custody for any public offense, *committed in any other State* or Territory, *for which, by the Constitution and laws of the United States, he should be delivered up to the authority of such State* or Territory," he should be remanded.—Code of 1876, § 4957. This is, perhaps, merely declaratory of what the law would require in the absence of the statute. The power claimed by the prisoner is the right to show that his case is *one outside of the class intended to be covered by the Constitution and laws of the United States.*

The authorities are not in harmony as to what questions can be reviewed by *habeas corpus* in cases of extradition. It seems very certain that there is no power to go behind the indictment or affidavit, with the view of investigating the question of the prisoner's guilt or innocence.—*In re Clark*, 9 Wend. 212. He can not be put upon trial for the crime with which he is charged, nor can any inquiry be made into either the merits of his defense, or mere formal defects in the charge. These inquiries are reserved for the courts of the demanding State, having jurisdiction of the offense.—*People v. Brady*, 56 N. Y. 182; *Robinson v. Flanders*, 29 Ind. 10. Congress has seen fit to adopt special legislation regulating this phase of the evidence in the case. The act of 1793 makes conclusive the production of a copy of the *indictment* found, or an *affidavit* made before a magistrate of the demanding State, "*charging* the person demanded with having committed treason, felony, or other crime," certified as authentic by the Governor of such State.—U. S. Rev. Stat. § 5278. These papers, if in due form, are made conclusive evidence of the guilt of the accused, when assailed on *habeas corpus*. It may be considered, therefore, as the settled doctrine of the courts, that a *prima facie* case is made, when the return to the writ of *habeas corpus* shows: (1) A demand or requisition for the prisoner made by the Executive of another State, from which he is alleged to have fled; (2) a copy of the indictment found, or affidavit made before a magistrate, charging the alleged fugitive with the commission of the crime, *certified* as authentic by the Executive of the State making the demand; (3) the warrant of the Governor authorizing the arrest. Where these facts are made to appear by papers regular on their face, there is a weight of authority holding that the prisoner is *prima facie* under legal restraint.—Spear's Law of Extrad. 208–303; *Matter of Clark*, 9 Wend. 212; *State v. Schlemn*, 4 Harring. 577; *In re*

*Hooper*, 52 Wis. 699; *People v. Brady*, 56 N. Y. 182; Bump's Notes of Const. Dec. 295–297; *Johnston v. Riley*, 13 Ga. 97.

Many of the cases hold that the warrant of the Governor, reciting these jurisdictional facts, is itself *prima facie* sufficient to show that all the necessary prerequisites have been complied with prior to its issue by him, although as to this proposition there is a conflict of opinion.—*Davis' case*, 122 Mass. 324; *Kingsbury's case*, 106 *Ib.* 223; *Robinson v. Flanders*, 29 Ind. 10; *Hartman v. Aveline*, 63 Ind. 344. . Which of these is the correct view, we need not decide, as all the proper papers in due form are set out in the return made to the writ by the respondent, Gentner, who is the relator in this proceeding.

It is obvious that the extradition clause of the Federal Constitution has reference only to a specified class, and not to all criminals. Its language is, a person charged with any crime "who shall *flee from justice* and be found in another State." Art. iv, sec. 2. The act of Congress is more emphatic, if possible, in describing such person as an actual fugitive, characterizing him as one who "has *fled*," and the State in which he is found as the State to which he "has *fled*."—U. S. Rev. Statutes, § 5278. It may be considered clear, therefore, without any conflict of authority, that the Constitution and laws of Congress do not provide for the extradition of any persons except those who may have fled from or left the demanding State as fugitives from the justice of that State.—Whart. Cr. Pl. & Pr. (8th Ed.) 31, and cases cited; Spear's Law of Extrad. 273, 310–316. "The offense," says Mr. Cooley, "must have been *actually* committed within the State making the demand, and the accused must have fled therefrom."—Cooley's Const. Lim. (5th Ed.) * 16, note 1.

There is a difference of opinion as to what must be the exact nature of this flight on the part of the criminal, but the better view, perhaps, is that any person is a fugitive within the purview of the Constitution, "who goes into a State, commits a crime, and then *returns* home."—*Kingsbury's case*, 106 Mass. 223; Hurd on Hab. Corp. * 606. In the case of *Voorhees*, 3 Vroom, 141, he was characterized as one "who commits a crime in a State, and *withdraws himself* from such jurisdiction." This point, however, we need not decide, as it is shown that the prisoner, Mohr, has never been into the jurisdiction of the demanding State since the commission of the alleged crime. He can not, therefore, be said to be a fugitive from the justice of that State.

It is clear to our mind that crimes, which are not *actually*, but are only *constructively* committed within the jurisdiction of the demanding State, do not fall within the class of cases intended to be embraced by the Constitution or act of Congress.

[Ex parte The State of Alabama, in re Mohr.]

Such at least is the rule, unless the criminal afterwards goes into such State and departs from it, thus subjecting himself to the sovereignty of its jurisdiction. The reason is, not that the jurisdiction to try the crime is lacking, but that no one can in any sense be alleged to have "fled" from a State, into the domain of whose territorial jurisdiction he has never been corporally present since the commission of the crime. And only this class of persons are embraced within either the letter or spirit of the Constitution, the purpose of which was to make the extradition of fugitive criminals a matter of duty, instead of mere comity between the States. The language of the Constitution and the law of Congress are entirely free from ambiguity on this point, being too obvious to admit of judicial construction; and the authorities are uniform in adoption of this view as to its manifest meaning.—Whart. Cr. Pl. & Pr. (8th Ed.) § 31; Spear's Law of Extrad. 309–316; *Voorhees' case,* 3 Vroom (N. J.), 147; *Kingsbury's case,* 106 Mass. 223; *Ex parte Smith,* 3 McLean (U. S.), 121; *Wilcox v. Nolze,* 34 Ohio St. 520.

We are of opinion that it was never intended by Congress in their enactment of the law of 1793, that the finding of the Governor of a State, that one is a fugitive from justice should be conclusive evidence of the fact, incapable of contradiction by facts showing the contrary. It is an important feature of the law, throwing some light upon its proper construction, that while it expressly prescribes the mode by which evidence of *the crime charged* shall be authenticated, it nowhere prescribes how the fact that he *is a fugitive from justice* shall be established. There seems to us to have been a good and sufficient reason for this distinction. Nothing was more proper than the policy of precluding the fugitive from disputing the certified records from the courts of a sister State, in view of the constitutional requirement, that "full faith and credit" shall be given in each State to "the records and judicial proceedings of every other State."—Const. U. S. Art. IV, § 1. But no such reason applies to the implication of the defendant's being a fugitive, because he is found in another State than the one in whose courts the charge is pending. It may be asserted that it was within the power of the Governor to investigate this fact before he issued the warrant, so as to satisfy himself of its truth. Perhaps this is the correct view, but this duty must, in its very nature, be discretionary. In practice, the fact of the criminal's flight is usually shown by affidavit, but this can not be regarded as conclusive upon any principle known to us, in the absence of statutory regulation so declaring the law. The better view seems to us to be, that one of the purposes of pretermitting express congressional legislation on this point was to refer the matter to executive determination, subject to review by *habeas*

33

*corpus* in the courts in all proper cases. The papers being regular, the Governor has a right to suppose that a *prima facie* case exists for a warrant, and the safer practice would seem to be, that the accused should be remitted to the courts to establish matters of defense *aliunde* the record. Especially is this true in doubtful cases.

As we have said, the grounds of imprisonment in this class of cases are constantly reviewed by *habeas corpus* in the State courts.—Whart. Cr. Pl. & Pr. § 35. It is just as material to show that the prisoner does not come within the law, on the ground that he has never fled from the demanding State, as on the ground that he is not the identical person intended to be indicted, or that there is no authenticated copy of the indictment, or other charge against him. All of these facts must concur, before the law authorizes the requisition to be made, or the warrant of arrest to issue. They are jurisdictional facts, in the absence of which the prisoner is excluded from the operation and influence of the law, and no extradition can be constitutionally authorized by congressional legislation.—Whart. Cr. Pl. & Pr. (8th Ed.) §§ 31, 34–35.

This view is supported by the best considered cases, and parol evidence has been often admitted by the courts, in proceedings by *habeas corpus*, for the purpose of showing that the warrant of the Governor was improvidently issued under the mistaken belief that the prisoner was a fugitive.

The case of *Wilcox v. Nolze*, 34 Ohio St. 520, decided in the year 1878, was a case of this kind: The prisoner had been indicted in the courts of New York for obtaining goods by false pretenses. The Governor of that State sent a requisition to the Governor of Ohio, demanding the prisoner's extradition as a fugitive from justice, under the act of Congress providing for such cases, the papers all being regular in form. The prisoner was allowed, upon *habeas corpus*, to review the Governor's finding, that he was a fugitive from justice. Parol evidence was admitted to show that the crime had been only constructively committed, and that he had never been in the demanding State, and could not, therefore, have fled from it. The court said: "Whether or not the accused committed the acts complained of while actually present in the demanding State, is *jurisdictional;* and it is clearly competent, in such case, to show by parol evidence a defect in the executive power, however regular the extradition papers may be in matter of form."

In *Hartman v. Avaline*, 63 Ind. 344, the accused had been arrested under a warrant issued by the Governor of Indiana, on a requisition from the Governor of the State of Illinois, charging him with the crime of obtaining goods by false pre-

tenses in the latter State, to the custody of whose agent he had been delivered on demand. Upon the writ of *habeas corpus* being sued out, it was shown that the accused was not in the State of Illinois at the time of the commission of the offense, but in the State of Indiana, where he resided, and that he had not fled from the former State. It was objected that the State courts had no jurisdiction to go behind the warrant of arrest issued by the Governor, but the court held that there was nothing in the Constitution of the United States, or the laws of Congress, which precluded the inquiry. It was said that the mere recitals in an executive requisition, in the absence of an affidavit, showing an actual fleeing from justice, did not authorize the issue of the warrant.

The same view was taken by the Supreme Court of Iowa in *Jones v. Leonard*, 50 Iowa 106 (s. c. 32 Amer. Rep. 116), a comparatively recent adjudication. A statute of that State provided that requisitions for fugitive criminals should be " accompanied by sworn evidence that the party charged is a fugitive from justice." The evidence accompanying the requisition consisted of an affidavit, charging that the plaintiffs were "fugitives from justice," which the Governor determined to be sufficient. It was held that the prisoners, after arrest, could review the conclusion reached by the Governor, and show that they were not fugitives from the State of Massachusetts, because the crime charged, which was obtaining goods by false pretenses, had been constructively committed by statements made in a letter, written from the State of Iowa, the State of their domicil. The court decided that the extradition law of Congress did not apply to cases of constructive crime like that under consideration, and that it was competent for the State courts to review the conclusion of the Governor. It was said by the court: "If the decision of the Governor is final and conclusive as to this question, it must be so as to all questions touching the extradition of a citizen under the constitutional provision above quoted." And again: "The Governor of this State is not clothed with judicial powers, and there is no provision of the Constitution or laws of the United States, or of this State, which provides that his determination is final and conclusive in the case of the extradition of the citizen." It was accordingly held by the court that the decision of the Governor was only *prima facie* correct, and that it was reviewable by the courts, on petition sued out by the prisoner for the writ of *habeas corpus*.

The case of *Hibler v. The State*, 43 Tex. 197, is in harmony with the same view. While it was there held that the Governor of Texas *prima facie* had authority to issue his warrant of arrest, where the papers were regular, upon the mere repre-

[Ex parte The State of Alabama, in re Mohr.]

sentation in the requisition, that the accused was "a fugitive from justice," it was decided that this was a question of fact, which was disputable by proof to the contrary, showing that "the presumption upon which the Governor had acted was unfounded in fact, and that thereby this process was being perverted to his injury."

There are other decisions strongly corroborative of the same view, but which we deem it unnecessary to review.—*Ex parte Joseph Smith*, 3 McLean (U. S. C. C.), 121; *Manchester's case*, 5 Cal. 237; Rorer on Inter-State Law, 221–2.

We are cited by counsel to the case of *Ex parte Swearingen*, 13 S. Car. 74, as an authority adverse to the foregoing views. The point decided in that case was merely, that the absence of an affidavit, that the petitioner was a fugitive from justice, was not fatal to the requisition; and from this conclusion the Chief Justice dissented in an opinion replete with the force of sound logic. The reasoning of the majority of the court in that case seemed to be based upon the false idea, that a denial of the fact that the accused was a fugitive, was in the nature of an *alibi* defense, going to the merits of the indictment.

We are opinion that the probate judge did not err in discharging the petitioner, and that it was competent for him to hear oral evidence in order to establish the fact, that the petitioner was not a fugitive from justice.

Any other conclusion than this would establish a doctrine very dangerous to the liberty of the citizen. It would greatly impair the efficacy of the proceeding of *habeas corpus*, which has been often characterized as the great writ of liberty, and may be regarded, not less than the right of trial by jury, as one of the chief corner-stones in the structure of our judiciary system. It might justly be considered as alarming to announce, that a writ, which has so frequently been used for centuries past to prevent the encroachment of kings upon popular liberty, is inadequate for the just purposes for which it has been invoked in this case.

The application made by the relator must be denied.

BRICKELL, C. J., *dissenting.*