Merrimack, }
Dec. 27, 1902. }

## STATE (*ex rel.* MUNSEY) *v.* CLOUGH.

It is not essential that a warrant for the rendition of a fugitive from justice should contain a formal recital of all the facts upon which it is issued; and if the record evidence presented to the governor is legally sufficient to support the necessary facts, it is to be presumed, in the absence of proof to the contrary, that the warrant was based upon their existence.

In a proceeding for extradition, evidence that the accused departed from the demanding state after committing crime therein, and was subsequently found in this state, supports the finding that he is a fugitive from justice, within the meaning of that term as used in the federal constitution.

The fact that a fugitive from justice fled from the demanding state prior to the commission of one crime charged in an indictment, furnishes no legal reason why he may not be extradited for offences alleged therein to have been committed before his departure.

A determination by the governor, that a person demanded upon a requisition from another state is a fugitive from justice, is not conclusive upon the court in *habeas corpus* proceedings.

The fact that the record evidence accompanying a requisition shows that the offence charged was committed more than six years prior to the date of the indictment, does not necessarily preclude a finding that the accused is a fugitive from justice.

A warrant for the rendition of a fugitive from justice is not void for variance in the description of the offence, if its meaning is made sufficiently plain and definite by reference to the indictment.

Where a requisition for the rendition of a fugitive from justice is accompanied by a duly authenticated indictment, which substantially charges the commission of an offence against the laws of the demanding state and is drawn in accordance with its uniform practice, this court will not pass upon the constitutionality of such method of procedure in the courts of that jurisdiction.

A warrant issued by the governor for the arrest of a fugitive from justice is not void because of an obvious clerical error in an affidavit accompanying the requisition, nor because it is addressed to a sheriff in this state, and not to the agent appointed by the demanding state.

HABEAS CORPUS. Trial before *Stone*, J., and case transferred from the April term, 1902, of the superior court.

The defendant, who is the sheriff of the county, states in his return that he has the custody of the relator under a warrant from the governor of this state, issued on the requisition of the governor of Massachusetts. The warrant recites that " it has been represented to me by the acting governor of the commonwealth of Massachusetts that Martha S. Munsey stands charged with the crime of uttering forged wills, which he certifies to be a crime under the laws of said commonwealth, committed in the county of Middlesex in said commonwealth, and has taken refuge in the state of New Hampshire, and the said governor of Massachusetts having, in pursuance of the constitution and laws of the United States, demanded of me that I shall cause the said Martha S. Munsey to be arrested and delivered to Jophanus H. Whitney, who is duly authorized to receive her into his custody and convoy her back to the said commonwealth of Massachusetts. And whereas, the said representation and demand is accompanied by certified copy an indictment, whereby the said Martha S. Munsey is shown to have been duly charged with the said crime and with having fled from said commonwealth and taken refuge in the state of New Hampshire, which is duly certified by the acting governor of Massachusetts to be authentic and duly authenticated : Therefore, you are required to arrest and secure the said Martha S. Munsey wherever she may be found within this state, and afford her such opportunity to sue out a writ of *habeas corpus* as is prescribed by the laws of this state, and to thereafter deliver her into the custody of the said Jophanus H. Whitney to be taken back to the said commonwealth from which she fled, pursuant to the said requisition."

From the copy of the indictment referred to, it appears that the relator was indicted by the grand jury of the county of Middlesex, in Massachusetts, on the second Monday of February, 1892, in which it is charged that the relator, on February 28, 1895, "at Cambridge in the county of Middlesex aforesaid, with intent to injure and defraud, did utter and publish as true, a certain forged instrument purporting to be a will, well knowing the same to be forged." In the second and third counts she is charged with similar offences committed respectively on May 17, 1895, and November 20, 1901. In each count the alleged forged will is set out in full.

In the certificate of the clerk of the court in which the indictment is pending, it is stated that the indictment was found and returned " on the second Monday of February, A. D. 1892." The requisition papers also contain the affidavit of Whitney, in which it is stated that the relator has " fled from the limits of said commonwealth and is a fugitive from justice "; also that " at the time of the commission of said crime she was in the state of Massachusetts ; . . . that she fled from said commonwealth of Massachusetts on or about the fourth day of November, A. D. 1901 ; that she is not now within the limits of the commonwealth, but, as I have reason to believe, is now in Pittsfield, in the state of New Hampshire."

The affidavit of the district attorney was submitted to th e governor, in which he refers to Martha S. Munsey as one " who stands charged by indictment with the crime of uttering forged wills, committed in the county of Middlesex, on the 28th day of February, A. D. 1895, on the 17th day of May, A. D. 1895, and on the 20th day of November, A. D. 1901, and who to avoid prosecution fled from the jurisdiction of this commonwealth and is now a fugitive from justice, and, as I am informed, is within the jurisdiction of said state of New Hampshire. And I further certify that the offence charged against the said fugitive is a felony, and that said offence and punishment therefor is defined in section 1 of chapter 204 of the Public Statutes. Application for the arrest and return of the said fugitive has not been sooner made because the indictment was not found by the grand jury until the February sitting of the superior court in the year 1902."

The relator claiming that on the face of the documents submitted to the governor he was not authorized to issue his warrant, and that the warrant is defective, made a motion for her discharge, which was denied, subject to exception.

*Edward A. Lane* and *Sargent, Niles & Morrill*, for the relator.

*Mitchell & Foster*, for the defendant.

WALKER, J. One question presented by the case is whether the record evidence submitted to the governor, upon the proceeding before him for the extradition of the relator, shows, as a matter of law, that he exceeded his authority in issuing the warrant for her arrest and removal to Massachusetts. How far his duty was discretionary, and to what extent he was obliged to comply with the demand for the surrender of the alleged fugitive from justice, are questions not necessarily material to the present inquiry. He has exercised whatever discretion he possesses, and

has complied with the demand. He has issued his warrant for the arrest of the relator and for her return to Massachusetts. Has he thereby violated any of her rights of citizenship under the constitution and laws of the United States or of this state?

The rendition of a fugitive from justice to the state from which he fled is authorized by the constitution of the United States (*art.* IV, *s.* 2), which provides that "a person charged in any state with treason, felony, or other crime, who shall flee from justice and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime." To make this provision effectual, and to afford means for its practical operation, congress has enacted that "whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found, or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear." R. S. U. S., *s.* 5278.

As supplementary to these provisions, the legislature of this state has enacted the following statute: "If the governor is satisfied that the demand is conformable to law and ought to be complied with, he shall issue his warrant under the seal of the state, authorizing the agent who shall make the demand, either forthwith or at such time as shall be designated in the warrant, to take and transport such person to the line of the state, at the expense of such agent, and shall also, by the warrant, require the civil officers within this state to afford all needful assistance in the execution thereof." P. S., *c.* 263, *s.* 8. If the governor has not substantially complied with these constitutional and statutory provisions, the relator must be discharged from arrest. She cannot be forcibly removed from this jurisdiction, except by virtue of legal process and procedure. Unless she is one of the class of persons which the federal constitution makes liable to rendition, and unless the legal requirements in such cases have been substantially observed, the governor's warrant is void, and the court must order her discharge. It is the duty of the court to protect the rights of citizenship.

The question of the validity of the governor's warrant must be considered in connection with the demand, the copy of the indictment, and the affidavits submitted to him. It is not essential that the warrant should contain a formal statement of all the facts upon which it is issued. *Kingsbury's Case,* 106 Mass. 223 ; *People* v. *Pinkerton,* 17 Hun 199 ; *In re Romaine,* 23 Cal. 585. If an examination of the record evidence presented to the governor legally authorizes the finding of the necessary facts, it will be presumed, in the absence of evidence to the contrary, that he made such findings.

It is insisted that the warrant is fatally defective because it contains no statement of a finding by the governor that the relator is a fugitive from justice. In *Roberts* v. *Reilly,* 116 U. S. 80, in which the warrant was similar to the one in this case, the court say (*p.* 95): " It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof." In *State* v. *Justus,* 84 Minn. 237, 243, the court say upon this subject : " This is a matter upon which the chief magistrate granting the warrant should have evidence, although the law does not describe its character, nor the precise rules by which such fact shall be established. It would seem to follow that the issuance of the warrant embraces the exercise of a prerogative of the governor of the state where the fugitive is, and that it must be presumed, in the absence of proof to the contrary, where the executive acts in such case, that he has performed his duty in that respect. Hence, when a proper warrant has been issued, the burden of showing that the prisoner has not fled or is not a fugitive from justice rests upon the prisoner in *habeas corpus* proceedings." In that case the warrant did not contain a finding that the prisoner was a fugitive. It simply recited that " a demand has been made, pursuant to the constitution and laws of the United States, by H. A. Northcott, acting governor of the state of Illinois, upon the governor of the state of Minnesota, for the delivery of Eddie McNichols as a fugitive from justice of the state of Illinois." The court held this sufficient, on the ground that technical precision is not necessary in the warrant. See also, *Ex parte Reggel,* 114 U. S. 642 ; *Commonwealth* v. *Hall,* 9 Gray 262, 266 ; *Kingsbury's Case, supra ; Davis' Case,* 122 Mass., 324 ; *People* v. *Donohoe,* 84 N. Y. 438 ; *Ex parte Sheldon,* 34 Ohio St. 319.

What the result might be, upon *habeas corpus* proceedings, if none of the written evidence required by law for the issuance of

the warrant were before the court, and the validity of the warrant was attacked (*People* v. *Pinkerton*, 17 Hun 199), it is unnecessary to inquire. If the evidence is legally sufficient to support the necessary facts, it must be presumed, even from a warrant which does not contain a full recital of such facts, that it was based upon their existence. No particular form of a warrant is prescribed, and an examination of the cases shows that the warrant in this case is not an exceptional one. The case of *In re Jackson*, 2 Flip. 183, holding that a warrant was invalid because it recited that the person charged had been " represented " to be a fugitive from justice, instead of stating an express conclusion on this point, is against the weight of authority, and was substantially overruled by *Roberts* v. *Reilly, supra.* 2 Moore Ext., s. 640.

Whether the relator is charged with a crime in another state, and whether she is a fugitive from justice, are questions upon which it was the duty of the governor to pass before ordering her removal from the state. " Under the act of congress, it became the duty of the governor of Utah to cause the arrest of Reggel, and his delivery to the agent appointed to receive him, when it appeared: (1) that the demand by the executive authority of Pennsylvania was accompanied by a copy of an indictment, or affidavit made before a magistrate, charging Reggel with having committed treason, felony, or other crime within that state, and certified as authentic by her governor ; (2) that the person demanded was a fugitive from justice." *Ex parte Reggel*, 114 U. S. 642, 649. " To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun; but simply that having, within a state, committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offence he has left its jurisdiction, and is found within the territory of another." *Roberts* v. *Reilly,* 116 U. S. 80, 97.

In the *Matter of Voorhees*, 32 N. J. Law 141, 150, the court say: " A person who commits a crime within a state, and withdraws himself from such jurisdiction without waiting to abide the consequences of such act, must be regarded as a fugitive from the justice of the state whose laws he has infringed. Any other construction would not only be inconsistent with good sense, and with the obvious import of the word to be interpreted in the context in which it stands, but would likewise destroy, for most practical purposes, the efficacy of the entire constitutional provision." " The fact that a man is charged with crime in one state and is

afterward found in another, has generally been regarded as *prima facie* evidence that he is a fugitive." *Drinkall* v. *Spiegel*, 68 Conn. 441, 448; *Kingsbury's Case, supra.*

The evidence that the relator departed from Massachusetts after the commission of the alleged crimes, and was found in this state, supports the necessary finding that she is a fugitive. The affidavit of Whitney tends to show that she fled "about the fourth day of November, A. D. 1901," after the dates of the crimes alleged in the first two counts of the indictment, but before the date of the third crime. It may be true that she could not be a "fugitive" on account of a crime committed by her when not within the jurisdiction of Massachusetts, or that a person cannot be said to "flee" from a state unless he was personally there at the time of the alleged offence. Constructive presence may not be sufficient. 2 Moore Ext., *ss.* 581, 585; *People* v. *Hyatt*, 172 N. Y. 176. But the fact, if it be one, that the relator departed from the demanding state before the commission of one crime alleged in the indictment, for which alone she could not be extradited, suggests no reason why she could not legally be returned for other crimes alleged to have been committed there before she left. The liability that she may be tried on the last count alone does not exclude her from the class of persons made liable to extradition by the federal constitution. She is still "a person charged . . . with . . . crime." The question is, not whether the governor might decline to extradite her, for that reason, or because he believed the demand was not made in good faith, but whether her rights of citizenship are infringed by her rendition to answer to such an indictment. Neither the constitution nor the statutes upon the subject make an exception of that character. *Lascelles* v. *Georgia*, 148 U. S. 537, 542, 547; *Commonwealth* v. *Wright*, 158 Mass. 149. If the indictment upon which this proceeding is based had contained only the first count, but it appeared that another indictment containing the other counts was pending in the same court, that fact would not prevent the rendition of the prisoner, though the question in legal effect would be substantially the same as is presented here. The governor was justified in finding that she was a fugitive with reference to the first two counts in the indictment. But upon that question the relator is entitled to submit evidence and be heard; and the justice before whom the *habeas corpus* proceedings were returned may review the action of the governor in this respect. The governor's finding that the relator is a fugitive is not conclusive upon the court on *habeas corpus.* Church Hab. Corp., *s.* 474 *a*; 2 Moore Ext., *s.* 640; Spear Ext. 391; *Hartman* v. *Aveline*, 63 Ind. 344; *Jones* v. *Leonard*, 50 Ia. 106; *In re Mohr*, 73 Ala. 503. If his finding of fact in this re-

spect is erroneous, the prisoner is unlawfully restrained of her liberty and is entitled to a discharge. It is a principle of general application, that one cannot be finally deprived of his liberty except upon a judicial trial.

The fact that it appears from the indictment that the offences charged in the first two counts were committed more than six years before the finding of the indictment, does not preclude a finding that she was a fugitive from justice; and such finding by the governor was justified by the evidence before him. If Whitney's affidavit is ambiguous and may be open to more than one construction, so far as it relates to the length of time Mrs. Munsey resided in Massachusetts after the date of the offence alleged in the first count and before November 4, 1901, when he certifies she fled, it was not incompetent as evidence, to be considered by the governor, upon the question whether she was a fugitive from justice as to the first two counts. It does not necessarily establish the proposition, as claimed by her, that during all that time she was "usually and publicly resident" (Mass. P. S., c. 213, s. 25) in that state. If it did, it would become necessary to consider the question whether under those circumstances she could be a fugitive from justice within the meaning of the law of extradition. The affidavit states unequivocally that she was "a fugitive from justice." This statement, though in some sense a conclusion of law, was held sufficient in *Ex parte Reggel*, *supra*, where the court say (*p.* 653) that the accused should not be discharged "merely because, in the judgment of the court, the evidence as to his being a fugitive from justice was not as full as might properly have been required, or because it was so meagre as, perhaps, to admit of a conclusion different from that reached by" the governor. It was sufficient to make out a *prima facie* case. Whether, in this case, there was other evidence before the governor upon which his finding could be based, it is unnecessary to inquire.

The indictment upon which the requisition is founded consists of three counts, each charging the respondent with intentionally and fraudulently uttering and publishing as true "a certain forged instrument purporting to be a will." It is conceded that forging a will is a crime under the laws of Massachusetts. But it is claimed that the warrant is faulty, because it states that the relator is "charged with the crime of uttering forged wills." This is a sufficiently definite statement of the charges in the indictment for practical purposes, and affords no substantial or reasonable ground for holding the warrant to be void, especially when by a reference to the indictment its meaning is rendered sufficiently plain and definite.

The objection is made that the relator is charged in the indict-

ment with three distinct and independent offences, and that for this reason the indictment is bad at common law and is repugnant to article XII of the bill of rights of Massachusetts, which provides that " no subject shall be . . . deprived of his . . . liberty, but by the judgment of his peers or the law of the land." It is also claimed to be repugnant to the fourteenth amendment of the constitution of the United States for the same reason. Whether this court has jurisdiction, under the federal constitution and the law of congress relating to extradition, to decide upon the validity of the formal allegations in the indictment, which substantially charges the fugitive with the commission of a crime, is a question which the weight of authority answers in the negative. *Kentucky* v. *Dennison*, 24 How. 66, 107 ; *Ex parte Reggel*, 114 U. S. 642, 651 ; *In re Roberts*, 24 Fed. Rep. 132 ; *Roberts* v. *Reilly, supra ; People* v. *Byrnes*, 33 Hun 98, 101 ; *Matter of Voorhees*, 32 N. J. Law 141, 146 ; *State* v. *O'Malley*, 38 Minn. 243 ; Spear Ext. 498 ; 2 Moore Ext., ss. 550, 638 ; and cases cited *supra*. But without deciding whether the joinder of two or more counts in an indictment charging distinct offences is faulty as a matter of criminal pleading, it does not appear that in Massachusetts such joinder renders the indictment absolutely void. The indictment may still be sufficient to support a conviction under one of the counts. In *Commonwealth* v. *Tuck*, 20 Pick. 356, 361, it is said : " A defective indictment cannot be cured by verdict. If the crime be not correctly described, no judgment can be rendered either upon verdict or plea of guilty. 2 Hale's P. C. 193 ; *Commonwealth* v. *Morse*, 2 Mass. [128] 130 ; *Commonwealth* v. *Hearsey,* 1 Mass. 137. But the objection now under consideration is totally different. It is not that the offence is defectively set forth, but that more than one offence is sufficiently set forth in the same indictment. The only argument which lies against the latter is, that it subjects the defendant to inconvenience and danger by requiring him to prepare himself to meet several charges at the same time. The appropriate remedy would be a motion to the court to quash the indictment, or to confine the prosecutor to some one of the charges."

" The objection that the indictment is bad, because more than one offence is joined in it, cannot be sustained. It is settled in this commonwealth that several offences may be charged in the same indictment when they are of the same general nature, and when the mode of trial and the nature of the punishment are the same." *Commonwealth* v. *Brown*, 121 Mass. 69, 82.

In *Josslyn* v. *Commonwealth*, 6 Met. 236, 239, Chief Justice *Shaw* remarks : " The next objection is, that there were two distinct offences charged in two distinct counts, which is irregular.

Without considering whether, if this is an irregularity, for which a court would, on motion, quash the indictment, or put the prosecutor to his election on which count to proceed (*Commonwealth* v. *Tuck*, 20 Pick. [356] 362), we think that, within certain limits, different offences of the same nature may be stated in different counts of an indictment, when the same mode of trial applies, and the same judgment is to be given."

" It is always open to the presiding judge to order a separate trial on each distinct charge, when there is any reason for supposing that the defendant will be perplexed in his defence, or unnecessarily embarrassed by being put on trial for two distinct offences.   We see no good reason for holding that it is illegal to present in the same indictment felonious offences of a similar character, and having a like punishment." *Commonwealth* v. *Hills*, 10 Cush. 530, 534.   See, also, *Commonwealth* v. *Carey*, 103 Mass. 214 ; *Commonwealth* v. *Costello*, 120 Mass. 358.

Even if it were conceded that this indictment is faulty for the reason assigned by the relator, and that a trial and conviction on all the counts would not be in accordance with " the law of the land," it would not follow that the indictment was a nullity and that her arrest thereon was illegal.   The fact that it contains three counts does not make it necessary that she should be tried upon each, or prevent the entry of a *nolle prosequi* as to two of them and a trial as to the other ; and a verdict of guilty under one count alone would not be erroneous because the indictment contained other counts for which she was not tried.   *Commonwealth* v. *Holmes*, 103 Mass. 440.   If she cannot under the constitution of the United States or under that of Massachusetts be tried for three distinct offences set out in one indictment, it is not to be presumed that the courts of that state would sanction such procedure, but that they would protect her in the enjoyment of all of her constitutional rights.   Her constitutional right to be tried according to " the law of the land " does not necessarily include a right to escape a trial upon one good count in a regularly returned indictment containing other counts.   *Commonwealth* v. *Cain*, 102 Mass. 487, 489.

But it is not necessary to determine what the effect of the alleged misjoinder may be upon the validity of the indictment at common law, or to discuss the question whether the decisions of the Massachusetts court above referred to, and many other similar cases in that jurisdiction, are repugnant to constitutional provisions. If they are open to that objection, as the relator claims, the courts of that state, where her alleged crime was committed and where she must be tried, if tried at all, will afford her ample protection in all her constitutional rights.   The contrary presumption cannot

be entertained, if the federal law providing for the extradition of alleged criminals is recognized as an effectual means of aiding in the enforcement of the criminal laws of the various states. An authoritative determination of this question has been made by the supreme court of the United States, as far at least as the federal constitution is concerned. One Pearce was arrested in Texas, on a requisition from the governor of Alabama for his extradition for trial in the latter state on two indictments for embezzlement and larceny. He sought his discharge upon *habeas corpus*, on the ground that the indictments were insufficient to authorize his extradition, because it was not alleged therein that the offences were committed in Alabama, that no time or place were laid therein, and that it did not appear where the offences were committed. He relied entirely for his discharge upon the invalidity of the indictments. The trial court in which the *habeas corpus* proceedings were instituted refused to discharge him. He thereupon took an appeal to the court of criminal appeals of Texas, where it was held that " if it reasonably appears upon the trial of the *habeas corpus* that the relator is charged by indictment, in the demanding state, whether the indictment be sufficient or not under the law of that state, the court trying the *habeas corpus* case will not discharge the relator, because of substantial defects in the indictment under the laws of the demanding state. To require this would entail upon the court an investigation of the sufficiency of the indictment in the demanding state, when the true rule is, that if it appears to the court that he is charged by indictment with an offence, all other prerequisites being complied with, the applicant should be extradited." *Ex parte Pearce*, 32 Tex. Cr. Rep. 301, 307.

The case was then brought before the supreme court of the United States, and the decision of the state court was affirmed in an opinion delivered by Chief Justice *Fuller*, in which he says : " It was not disputed that the indictments were in substantial conformity with the statute of Alabama in that behalf, and their sufficiency as a matter of technical pleading would not be inquired into on *habeas corpus*. *Ex parte Reggel*, 114 U. S. 642. Nor was there any contention as to the proper demand having been made by the executive authority of the state from whence the petitioner had departed, or in respect of the discharge of the duty imposed by the constitution and laws of the United States on the executive authority of the asylum state to cause the surrender. The question resolved itself, therefore, into one of the validity of the statute on the ground of its repugnancy to the constitution, and the court of appeals declined to decide in favor of its validity. And if it could be said upon the record that any right under the constitution had been specially set up and claimed by plaintiff

in error at the proper time and in the proper way, the state court did not decide against such right, for the denial of the right depended upon a decision in favor of the validity of the statute. What the state court did was to leave the question as to whether the statute was in violation of the constitution of the United States, and the indictments insufficient accordingly, to the demanding state. Its action in that regard simply remitted to the courts of Alabama the duty of protecting the accused in the enjoyment of his constitutional rights, and if any of those rights should be denied him, which is not to be presumed, he could seek his remedy in this court. We cannot discover that the court of appeals, in declining to pass upon the question raised in advance of the courts of Alabama, denied to plaintiff in error any right secured to him by the constitution and laws of the United States, or that the court in announcing that conclusion erroneously disposed of a federal question." *Pearce* v. *Texas*, 155 U. S. 311, 313, 314; *Ex parte Hart*, 59 Fed. Rep. 894.

As the relator is substantially charged with the commission of one crime at least in Massachusetts, upon an indictment properly authenticated, and as it appears that the form of the indictment, if peculiar, is in accordance with the uniform practice in that state, this court will neither affirm nor deny the constitutionality of that method of procedure in the courts of the demanding state. To do so would be based upon the assumption of a right to impugn the validity of the decisions of a sister state, and to hold that the relator could not be extradited unless it appeared that her trial in that state would be in accordance with the ideas of this court upon the question of its constitutionality. Such a holding, while opposed to the ordinary principles of comity existing between the states, would go far towards abrogating the salutary provisions of the federal law upon the subject of extradition. *People* v. *Byrnes*, 33 Hun 98, 101, 104. So far as the trial of the question of her rendition is concerned, the joinder of counts in the indictment presents no serious difficulty.

The evidently clerical error in the affidavit of the clerk of court, that the indictment was returned " on the second Monday of February, A. D. 1892," did not preclude a finding by the governor that the true date was the second Monday of February, 1902. The caption of the indictment, as well as the affidavit of the district attorney, fully authorized that conclusion, which is placed beyond peradventure by an amendment of the clerk's affidavit in this court. The objection urged on this ground is a refinement of technical reasoning which has nothing to commend it in the modern administration of justice in criminal cases.

Nor does the fact that the warrant was addressed to the sheriff

of Merrimack county, and not to the agent appointed by the demanding state, afford any reason for the relator's discharge. The statute (P. S., *c.* 263, *s.* 8) does not require that the warrant should be directed to the agent, but that it should authorize him " to take and transport " the fugitive out of the state, and should require the civil officers of the state to render necessary assistance for that purpose. The warrant was issued in compliance with these requirements.

As the relator has not succeeded in showing that any of her rights of citizenship are jeopardized by the action of the governor, the denial of her motion for a discharge, upon the reserved case, presents no error.

*Exception overruled.*

All concurred.