# EX PARTE REGGEL.

APPEAL FROM THE THIRD JUDICIAL DISTRICT OF THE TERRITORY
OF UTAH.

Submitted April 15, 1885.—Decided May 4, 1885.

The statute requiring the surrender of a fugitive from justice, found in one of the Territories, to the State in which he stands charged with treason, felony, or other crime, embraces every offence known to the laws of the demanding State, including misdemeanors.

Statement of Facts.

Each State has the right to prescribe the forms of pleading and process to be observed in its courts, in both civil and criminal cases, subject only to those provisions of the national Constitution designed for the protection of life, liberty and property in all the States of the Union ; consequently, in a case involving the surrender, under the act of Congress, of a fugitive from justice, it may not be objected that the indictment is not framed according to the technical rules of criminal pleading, if it conforms substantially to the laws of the demanding State.

Upon the executive of the State or Territory in which the accused is found rests the responsibility of determining whether he is a fugitive from the justice of the demanding State. But the act of Congress does not direct his surrender, unless it is made to appear that he is, in fact, a fugitive from justice.

If the determination of that fact, upon proof before the executive of the State where the alleged fugitive is found, is subject to judicial review upon *habeas corpus*, the accused, being in custody under his warrant—which recites the requisition of the demanding State, accompanied by an authentic indictment, charging him substantially as required by its laws with a specific crime committed within its jurisdiction—should not be discharged. because, in the judgment of the court, the proof showing that he was a fugitive from justice may not be as full as might properly have been required.

This was an appeal from the judgment upon *habeas corpus*, of the Third Judicial District Court of Utah, remanding the appellant to the custody of the marshal of the United States, by whom he had been arrested.

The arrest was made under the authority of a warrant of the governor of Utah, which recited that it had been represented by the governor of Pennsylvania that Louis Reggel stood charged in that Commonwealth with the crime of obtaining goods by false pretences from Daniel Myers and Charles Goodman; that he had fled from the justice of that Commonwealth; and had taken refuge in the Territory of Utah. It then proceeded:

"And whereas said representation and demand are accompanied by an indictment found against said Reggel by the grand inquest of the said State of Pennsylvania inquiring for the City and County of Philadelphia, in and before the Court of Quarter Sessions of the Peace for the said City and County of Philadelphia, March sessions, 1882, whereby said Louis Reggel is charged with the said crime, and an affidavit taken before a notary public of said State showing said Reggel's flight from

said State to and refuge in said Territory, and also the statute laws of said State defining and making said acts of said Reggel a crime, and which said indictment, affidavit, and laws are certified by said governor of Pennsylvania to be duly authenticated. You are, therefore, required to arrest the said Louis Reggel," &c.

The evidence laid before the governor of Utah was entirely documentary, and embraced the following papers:

1. The requisition, in the customary form, of the governor of Pennsylvania, requesting the apprehension of Reggel, and his delivery to the agent of Pennsylvania, and to which was annexed a copy of the indictment, and other papers, certified by him to be authentic.

2. A duly certified copy of the indictment referred to in the foregoing requisition, as follows:

" In the Court of Quarter Sessions of the Peace for the City and County of Philadelphia. March Sessions, 1882.

CITY AND COUNTY OF PHILADELPHIA, *ss:*

The grand inquest of the Commonwealth of Pennsylvania, inquiring for the city and county of Philadelphia, upon their respective oaths and affirmations, do present Louis Reggel, late of said county, on the thirteenth day of August, in the year of our Lord one thousand eight hundred and eighty-one, at the county aforesaid, and within the jurisdiction of this court, unlawfully and wilfully devising and intending to cheat and defraud Daniel Myers and Charles Goodman of their goods, moneys, chattels, and property, unlawfully did falsely and designedly pretend to the said Daniel Myers and Charles Goodman that he, the said Louis Reggel, was then and there the owner in his own right of a large stock of goods in his business as a merchant of Salt Lake City, in the Territory of Utah, of the value of thirty-five thousand dollars, and that he did not then and there owe to any person a single dollar on account of said goods and merchandise, or for money borrowed, and also then and there unlawfully did falsely and designedly pretend to the said Daniel Myers and Charles Goodman that he was then and there the owner in his own right of a certain

lot of ground, containing thereon a store building, wherein he carried on his business, at Salt Lake City, in the Territory of Utah; and that he was also then and there the owner in his own right of a certain other lot of ground, containing thereon a certain dwelling-house, wherein he then and there resided at Salt Lake City, in the Territory of Utah; and he, the said Louis Reggel, then and there unlawfully and falsely pretended to said Daniel Myers and Charles Goodman that said two houses and two lots were then and there together of the value of forty thousand dollars; and that said two lots and their improvements were then and there free from all incumbrance; whereas in truth and in fact the said Louis Reggel was not then and there the owner in his own right of goods and merchandise in his business of the value of thirty-five thousand dollars, at Salt Lake City, in the Territory of Utah, all paid for and free of debt, for money borrowed, the said Louis Reggel being then and there in the possession of and owner of a stock of goods and merchandise in his business at Salt Lake City, in the Territory of Utah, of the value of only about six thousand dollars, instead of the value of thirty-five thousand dollars, as then and there unlawfully, falsely, and designedly pretended by him, the said Louis Reggel; and the said Louis Reggel was then and there indebted in the sum of $3,500 to the banking-house of McCormick and Company, at Salt Lake City, in the Territory of Utah, for money drawn from said banking-house, and whereas in truth and in fact the said Louis Reggel was not then and there the owner in his own right of a certain lot of ground, containing thereon a storebuilding, wherein he then and there carried on his business at Salt Lake City, in the Territory of Utah, and a certain other lot of ground, containing thereon a dwelling-house, wherein he then and there resided at Salt Lake City aforesaid, together of the value of forty thousand dollars, clear of all incumbrances; that the said two lots of ground and the improvements and appurtenances thereunto belonging, were, by the said Louis Reggel, on the fourteenth day of January, in the year of our Lord one thousand eight hundred and eighty, by deed duly recorded in the office for the recording of deeds for Salt Lake county, in the Territory of

Utah, granted, sold, conveyed, and confirmed unto Robert Harkness and L. R. Jones, of said Salt Lake City, in the Territory of Utah, and the title to the said two lots of ground and improvements and appurtenances thereunto belonging, was, at the time of the making of said unlawful, false and fraudulent pretences by the said Louis Reggel, at the county aforesaid, in the said Robert Harkness and the said L. R. Jones, and not in the said Louis Reggel; and the said Louis Reggel then and there well knew the said pretences to be unlawful, fraudulent, and false. Whereupon the said Daniel Myers and Charles Goodman, believing the said false representations and pretences then and there made by the said Louis Reggel, sold and delivered to the said Louis Reggel, on a credit of four months [here follows a description and statement of the value of said goods, chattels and property alleged to have been obtained under false pretences]; which said goods and chattels and property the said Louis Reggel did then and there unlawfully obtain from the said Daniel Myers and Charles Goodman, with intent to cheat and defraud the said Daniel Myers and Charles Goodman, to the great damage of the said Daniel Myers and Charles Goodman, contrary to the form of the act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania.

GEORGE S. GRAHAM,
*District Attorney.*"

3. Duly certified copies of certain provisions of the penal laws of Pennsylvania, as follows:

" Every indictment shall be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of the assembly prohibiting the crime and prescribing the punishment, if any such there be, or, if at common law so plainly that the nature of the offence charged may be easily understood by the jury, every objection to any indictment for any formal defect apparent on the face thereof shall be taken by demurrer or on motion to quash such indict-

ment before the jury shall be sworn, and not afterward; and every court before whom any such objection shall be taken for any formal defect may, if it be thought necessary, cause the indictment to be forthwith amended in such particular by the clerk or other officer of the court, and thereupon the trial shall proceed as if no such defect appeared." 1 Brightly's Purdon's Dig. 347–8; Act of March 31, 1860.

"If any person shall by any false pretence obtain the signature of any person to any written instrument, or shall obtain from any other person any other chattel, money, or valuable security, with intent to cheat and defraud any person of the same, every such offender shall be guilty of a misdemeanor, and on conviction be sentenced to pay a fine not exceeding five hundred dollars and undergo an imprisonment not exceeding three years: *Provided, always*, That if upon the trial of any person indicted for such misdemeanor it shall be proved that he obtained the property in question in such a manner as to amount in law to larceny, he shall not by reason thereof be entitled to be acquitted of such misdemeanor, and no person tried for such misdemeanor shall be liable to be afterwards prosecuted for larceny upon the same facts." Ibid. 347–8; Act of March 31, 1860.

4. An affidavit by Frederick Gentner, as follows:

"COMMONWEALTH OF PENNA. *v*. LOUIS REGGEL.

Frederick Gentner, being duly sworn according to law, deposes and says: The grand jury of the March Sessions of the City and County of Philadelphia found a true bill of indictment against Louis Reggel, charging him with the crime of false pretences, and that the said Louis Reggel is a fugitive from justice, and now in Salt Lake City, Utah Territory.

FREDERICK GENTNER.

Sworn to and subscribed to this 10th day of April, A.D. 1882.

{ Seal of Court Quarter Sessions, County Philadelphia. }   ALLISON HENNESEY,
                                                          *per Clerk*.

Endorsed: Commonwealth *v*. Louis Reggel."

The foregoing constituted the evidence submitted to the Governor of Utah, on which his warrant for the arrest of appellant was granted.

From the order denying the application of the petitioner to be discharged and remanding him to the custody of the marshal, an appeal was allowed and perfected—the petitioner, pending the appeal, being placed under bond to surrender himself in execution of the judgment, if it should be affirmed, modified, or dismissed, and obey all orders made herein by this court.

*Mr. Arthur Brown* for petitioner.

MR. JUSTICE HARLAN delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

This case arises under §§ 5278 and 5279 of the Revised Statutes of the United States, which provide:

"SEC. 5278. Whenever the executive authority of any State or Territory demands any person as a fugitive from justice of the executive authority of any State or Territory to which such person has fled, and produces a copy of an indictment found or affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, it shall be the duty of the executive authority of the State or Territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of the arrest, the prisoner may be discharged. All costs or expenses incurred in the apprehending, securing, and transmitting such fugitive to the State or Territory making such demand shall be paid by such State or Territory.

"SEC. 5279. Any agent, so appointed, who receives the fugi-

tive into his custody, shall be empowered to transport him to the State or Territory from which he has fled. And every person who, by force, sets at liberty or rescues the fugitive from such agent while so transporting him, shall be fined not more than five hundred dollars, or imprisoned not more than one year." 1 Stat. 302, ch. 7, §§ 1, 2.

It is not necessary to consider the question suggested by counsel as to the right of the governor of the Territory to have withheld the papers upon which he based his warrant for the arrest of the accused; for, the record shows that the requisition and the accompanying papers from the governor of Pennsylvania constituted the evidence upon which he acted, and were submitted to the court to which the writ of *habeas corpus* was returned.

Under the act of Congress, it became the duty of the governor of Utah to cause the arrest of Reggel, and his delivery to the agent appointed to receive him, when it appeared: 1. That the demand by the executive authority of Pennsylvania was accompanied by a copy of an indictment, or affidavit made before a magistrate, charging Reggel with having committed treason, felony, or other crime within that State, and certified as authentic by her Governor. 2. That the person demanded was a fugitive from justice.

The first of these conditions was met by the production to the governor of Utah of the indictment (duly certified as authentic) of the grand jury of the Court of Quarter Sessions of the Peace for the City and County of Philadelphia, Pennsylvania, wherein the accused was charged with having committed the crime of obtaining by false pretences certain goods with the intent to cheat and defraud the persons therein named; which offence, as was made to appear from the statutes of that Commonwealth (a copy of which, duly certified as authentic, accompanied the indictment), is a misdemeanor under the laws of Pennsylvania, punishable by a fine not exceeding $500, and imprisonment not exceeding three years.

It was objected in the court of original jurisdiction, that there could be no valid requisition based upon an indictment for an offence less than a felony. This view is erroneous. It

was declared in *Kentucky* v. *Dennison*, 24 How. 66, 99, that the words "treason, felony, or other crime" in section 2 of Article I. of the Constitution include every offence, from the highest to the lowest, known to the law of the State from which the accused had fled, including misdemeanors. It was there said by Chief Justice Taney, speaking for the whole court, that, looking to the words of the Constitution, "to the obvious policy and necessity of this provision to preserve harmony between the States and order and law within their respective borders, and to its early adoption by the Colonies, and then by the Confederate States whose mutual interest it was to give each other aid and support whenever it was needed, the conclusion is irresistible, that this compact engrafted in the Constitution included, and was intended to include, every offence made punishable by the law of the State in which it was committed." It is within the power of each State, except as her authority may be limited by the Constitution of the United States, to declare what shall be offences against her laws, and citizens of other States, when within her jurisdiction, are subject to those laws. In recognition of this right, so reserved to the States, the words of the clause in reference to fugitives from justice were made sufficiently comprehensive to include every offence against the laws of the demanding State, without exception as to the nature of the crime.

Although the Constitutional provision in question does not, in terms, refer to fugitives from the justice of any State, who may be found in one of the Territories of the United States, the act of Congress has equal application to that class of cases, and the words "treason, felony, or other crime," must receive the same interpretation, when the demand for the fugitive is made, under that act, upon the governor of a Territory, as when made upon the executive authority of one of the States of the Union.

Another proposition advanced in behalf of appellant is, that the indictment which accompanied the requisition does not sufficiently charge the commission of any crime ; of which fact it was the duty of the governor of Utah to take notice, and which the court may not ignore in determining whether

the appellant is lawfully in custody. In connection with this proposition, counsel discusses, in the light of the adjudged cases, the general question as to the authority of a court of the State or Territory, in which the fugitive is found, to discharge him from arrest, whenever in its judgment, the indictment, according to the technical rules of criminal pleading, is defective in its statement of the crime charged. It is sufficient for the purposes of the present case to say that, by the laws of Pennsylvania, every indictment is to be deemed and adjudged sufficient and good in law which charges the crime substantially in the language of the act of assembly prohibiting its commission and prescribing the punishment therefor, or, if at common law, so plainly that the nature of the offence charged may be easily understood by the jury; and, that the indictment, which accompanied the requisition of the governor of Pennsylvania, does charge the crime substantially in the language of her statute. That Commonwealth has the right to establish the forms of pleadings and process to be observed in her own courts, in both civil and criminal cases, subject only to those provisions of the Constitution of the United States involving the protection of life, liberty and property in all the States of the Union.

The only question remaining to be considered, relates to the alleged want of competent evidence before the governor of Utah, at the time he issued the warrant of arrest, to prove that the appellant was a fugitive from the justice of Pennsylvania. Undoubtedly, the act of Congress did not impose upon the executive authority of the Territory the duty of surrendering the appellant, unless it was made to appear, in some proper way, that he was a fugitive from justice. In other words, the appellant was entitled, under the act of Congress, to insist upon proof that he was within the demanding State at the time he is alleged to have committed the crime charged, and subsequently withdrew from her jurisdiction, so that he could not be reached by her criminal process. The statute, it is to be observed, does not prescribe the character of such proof; but that the executive authority of the Territory was not required, by the act of Congress, to cause the arrest of ap-

pellant, and his delivery to the agent appointed by the governor of Pennsylvania, without proof of the fact that he was a fugitive from justice, is, in our judgment, clear from the language of that act. Any other interpretation would lead to the conclusion that the mere requisition by the executive of the demanding State, accompanied by the copy of an indictment, or an affidavit before a magistrate, certified by him to be authentic, charging the accused with crime committed within her limits, imposes upon the executive of the State or Territory where the accused is found, the duty of surrendering him, although he may be satisfied, from incontestable proof, that the accused had, in fact, never been in the demanding State, and, therefore, could not be said to have fled from its justice. Upon the executive of the State in which the accused is found, rests the responsibility of determining, in some legal mode, whether he is a fugitive from the justice of the demanding State. He does not fail in duty if he makes it a condition precedent to the surrender of the accused that it be shown to him, by competent proof, that the accused is, in fact, a fugitive from the justice of the demanding State.

Did it sufficiently appear that the appellant was, as represented by the executive authority of Pennsylvania, a fugitive from the justice of that Commonwealth? We are not justified by the record before us in saying that the governor of Utah should have held the evidence inadequate to establish that fact. The warrant of arrest refers to an affidavit taken before a notary public of Pennsylvania showing Reggel's flight from that Commonwealth. There was no such affidavit; but the reference, manifestly, was to the affidavit made by Frederick Gentner, which recited the finding by the grand jury of the City and County of Philadelphia, of a true bill of indictment charging Reggel with "the crime of false pretences," and stating that he "is a fugitive from justice," and was then in Salt Lake City, Utah Territory. This is sworn to, and is attested by the seal of the Court of Quarter Sessions—the court in which the prosecution is pending. It is not entirely clear from the record, as presented to us, what is the official character of the person before whom the affidavit was made. The reason-

able inference is, that the affidavit was made in the court where the prosecution is pending, and that it is one of the papers accompanying the requisition of the governor of Pennsylvania, and which he certified to be authentic.

It is contended that Gentner's affidavit that Reggel is a fugitive from justice is the statement of a legal conclusion, and is materially defective in not setting out the facts upon which that conclusion rested. Although that statement presents, in some aspects of it, a question of law, we cannot say that the governor of Utah erred in regarding it as the statement of a fact, and as sufficient evidence that appellant had fled from the State in which he stood charged with the commission of a particular crime, on a named day, at the City and County of Philadelphia; especially, as no opposing evidence was brought to his attention. If the determination of that fact by the governor of Utah upon evidence introduced before him, is subject to judicial review, upon *habeas corpus*, the accused, in custody, under his warrant—which recites the demand of the governor of Pennsylvania, accompanied by an authentic indictment charging him, substantially in the language of her statutes, with a specific crime committed within her limits—should not be discharged merely because, in the judgment of the court, the evidence as to his being a fugitive from justice was not as full as might properly have been required, or because it was so meagre as, perhaps, to admit of a conclusion different from that reached by him. In the present case, the proof before the governor of Utah may be deemed sufficient to make a *prima facie* case against the appellant as a fugitive from justice within the meaning of the act of Congress.

*Judgment affirmed.*