Ex Parte Dickson.

Opinion delivered September 25, 1902.

1.  *Extradition—Requisition—Sufficiency of.*

   Section 5278 Rev. Stat. U. S., provides for the extradition of fugitives from justice, upon a requisition therefor which shall contain a copy of an indictment found or affidavit made before a magistrate, charging the person demanded with the commission of a crime, and that this shall be certified as authentic by the governor or chief magistrate. A requisition which sets forth that "it appears by the annexed papers which I certify to be authentic and duly authenticated" that the person stands charged by indictment with the crime of murder, and accompanying this demand is a paper purporting to be an indictment and it not appearing whether it was the original or a copy. *Held*, to be sufficiently authenticated to make the requisition valid.

2.  *Habeas Corpus—Requisition—Fugitive from Justice—Evidence.*

   In a hearing upon an application for heabeas corpus to secure the petitioner's release from arrest under an extradition requisition the evidence necessary to show the person demanded to be a fugitive from justice, is furnished when from his own application it appears that he was present in the state where and at the time the offense with which he is charged was committed and at time of arrest is found within another jurisdiction, and from the requisition and testimony of the agent bearing same is shown to be charged with acts committed within the sister state which there constitute a crime.

3.  *Extradition—Power of Judge U. S. Court in Ind. Ter. to Grant*

   Section 41, Act of Congress, May 2, 1890, provides that the judge of United States Court in Indian Territory (there then being but one) shall have the same powers of extradition and requisition possessed by the Governor of the State of Arkansas. Later Acts of Congress create additional districts and additional judges. *Held*, that these additional judges have the same powers with respect to extradition as was given to the one judge by the Act referred to.

(32)

GILL, C. J., dissenting,

Appeal from the United States Court for the Northern District.

JOHN R. THOMAS, Judge.

Petition for habeas corpus by John Dickson against the United States marshal for the Northern District of the Indian Territory. From an order denying the writ, petitioner appeals. Affirmed.

On November 4, 1899, a requisition was filed from the governor of Arkansas, which is as follows:

"State of Arkansas, Executive Department. The Governor of the State of Arkansas to His Excellency the Judge of the U. S. Court for the Northern District, Ind. Ter.: Whereas, it appears by the annexed papers which I certify to be authentic and duly authenticated in accordance with the laws of this state, that John Dickinson stands charged by indictment with the crime of murder in the first degree, committed in the county of Calhoun, in this state, which I certify to be a crime under the laws of this state, and that he has fled from this state and is a fugitive from the justice thereof, and it is believed such fugitive has taken refuge in the Indian Territory: Now, therefore, I, Daniel, W. Jones, governor of the State of Arkansas, pursuant to the provisions of the constitiution and laws of the United States, do hereby make requisition for the apprehension of the said fugitive and for his delivery to W. H. Furlow, who is hereby authorized to receive and convey him to the state of Arkansas, here to be dealt with according to law. In testimony whereof, I have hereunto set my hand, and caused to be affixed the great seal of the state of Arkansas, Done at Little Rock this 20th day of October in the year of our Lord one thousand eight hundred

and ninety-nine, of the Independence of the United States the one hundred and twenty-fourth, and of this state the sixty-fourth. Danl. W. Jones, Governor. Alex. C. Hull, Secretary of State. By the Governor, by E. R. Jett, Deputy Secretary. (Seal).

"In Calhoun County court. The State of Arkansas vs John Dickinson, Defendant. The grand jury of Calhoun county, in the name of and by the authority of the state of Arkansas on oath accuse John Dickinson of the crime of accesory before the fact of murder, comitted as follows, to wit: That one Wiley Brown on the 2d day of July, 1895, in Calhoun County, Arkansas, did unlawfully, feloniously, willfully, with malice aforethought, and with premeditation ·and deliberation, assault, kill, and murder one Allen Mastin, by shooting him with a gun with intent to kill and murder the said Allen Martin then and there; that the said John Dickinson, before the said murder as aforesaid was committed—that is to say, on the 2nd day of July, 1895, in Calhoun county, Arkansas,—did unlawfully, feloniously, wickedly, willfully, with malice aforethought, and with premeditation and deliberation knowingly advise, incite, encourage, aid and abet the said Wiley Brown the said murder as above described to commit and do, against the peace and dignity of the state of Arkansas. (Signed) H. P. Laird.

"No. 217 (A301). The State of Arkansas vs. John Dickinson. Indictment before the Fact of Murder. A true bill. J. D. Hanna, Foreman.

"Filed-in open court in the presence of all the grand jury on this 16th day of July, 1896. T. N. Means, Clerk. (Call Geo. W. Dickenson, T. N. Means.")

On the same day a bench warrant was issued for the said Dickinson by Hon. John R. Thomas, judge, which was returned on the same day by the marshal, certfying that he had arrested

the said Dickinson and had him in custody. On the same day a petition was filed for a writ of habeas corpus, as follows:

"To the Honorable John R. Thomas, Judge of the United States Court for the Northern District of the Indian Territory: Your petitioner, the undersigned John Dickson, respectfully represents to your honor that he is a citizen of the United States and is of African descent; that his father was a slave before the war; that your petitioner is a native of the state of Arkansas; that he was born and reared in Calhoun county, in said state, and is now twenty-five years of age; that he emigrated from said county and state to the Creek Nation in 1897, and has resided in said nation ever since; that on the —— day of ——, 1899, the Honorable Daniel W. Jones, as governor of the state of Arkansas, made his requisition upon the judge of the United States Court, Northern District, Indian Territory, for the extradition of your said petitioner to said county and state for the alleged crime of murder in the first degree, alleged to have been committed in the county and state aforesaid in July, 1895; that afterwards, to wit, on the —— day of ——, 1899, a warrant of arrest was issued upon said requisition by the United States judge of said Northern District of the Indian Territory for the arrest of your petitioner in compliance with said requisition, upon which said warrant your petitioner was duly arrested and brought before your honor to be dealt with as the law directed. Your petitioner states that he is charged in the supposed indictment which accompanies said requisition with being an accessory before the fact in the murder of Allen Martin in said county and state in July, 1895, but said indictment fails to allege that your petitioner was present when the alleged murder was committed. Said indictment alleges that Wiley Brown, in the said month of July, 1895, and in said county and state, did kill and murder said Allen Martin with a gun, and that your petitioner incited, aided, and abetted said Brown in the commission

of said murder. Your petitioner states that he is not guilty of the crime charged, and was not present when the crime was committed, nor had he any knowledge of the same when it was committed, or that it was going to be committed, nor did he in any wise participate in said crime either in act, deed, or intent. Your petitioner states that he continued to reside in said county of Calhoun for the space of two years after the said murder was committed; that he taught a public school in said county in 1895-1896; that, when he made up his mind to move from there to the Creek Nation, he made his purposes to move public in the community where he lived, and the same was generally known before his removal; that in July, 1895, your petitioner was arrested in said county and state and placed in the jail of said county, charged with the crime aforesaid where he remained about twenty-one days; that Jim Ware and Jack Ware were also arrested and placed in jail aforesaid with him, charged with the same offense; that said Ware boys on or about the 15th day of July, 1895, were taken from said jail to a point about a half mile away, and then and there lynched and murdered by unknown parties. Another colored man was afterwards murdered and lynched by the deputy sheriff of Bradley county and others from Calhoun county aforesaid. Your petitioner, after the said Wares were thus lynched, was discharged from said jail, and he has never had any knowledge of the charges against him for murder or any other crime in said county or elsewhere, nor did he have any knowledge of any criminal charges against him in said county when he moved from there to the Creek Nation; that from and before July, 1895, to July 1897, your petitioner continued to reside and stay where he had been born and lived all his life. Your petitioner states that he is not a fugitive from justice, as he believes, and that he never left said county and state with the intent or purpose of evading any criminal charges against him, nor with any knowledge of the pendency of criminal charges against him in Calhoun or any other county in said state; that

he has never scouted from the officers of the law in said state or the Indian Territory, or elsewhere, but that he has retained his proper name at all times and wherever he has been, and has kept up a correspondence with friends and acquaintances in said county ever since he moved from said state. Your petitioner believes and alleges that the object and purpose of his extradition on the part of the relatives and friends of the deceased, Allen Martin, in said county, is to kill and murder him, and not for the purpose of a fair and impartial trial in the courts of Calhoun county aforesaid. But your petitioner does not impute to the governor of said state any such evil motive, but only to those in said county who participated in the other mob violence aforesaid. That some fifteen or twenty other colored persons in said county were horribly beaten and bruised and mangled on account of the same charge for which his extradition is sought. Your petitioner further alleges that, as he believes, said requisition ought not to be honored for the further reason that there is no legal authority in the Indian Territory to honor such requisition; that the act of congress of May 2, 1890, provided for honoring requisitions from the executives of the states by the judge of the Indian Territory, at which time the Indian Territory had but one judge, and the said territory was but one district. Since that time the said territory has been, by acts of congress, divided into districts, and separate judges assigned to each. Subsequently an additional judge was provided for by act of congress whose places of holding court were made subject to the order of United States court of appeals of said territory. Your petitioner alleges that the judge of the Northern district, to whom said requisition is addressed, is not your honor, as he believes, nor has the honorable judge of said district the authority to honor said requisition. And so your petitioner alleges that he is now confined in jail of the United States for the Northern District, at Muskogee, under and by virtue of said warrant, and that he is thus imprisoned and restrained of his liberty

contrary to the law and the constitution of the United States and against his will and consent. Wherefore he prays your honor to grant him your most precious writ of habeas corpus, that he may be brought before your honor to be dealt with as the law may direct, and he will ever pray. John Dickson says the statements contained in the above and foregoing petition are true, as he believes. (Signed) John Dickson.

"Subscribed and sworn to before me this 4th day of November, 1899. (Seal) Ralph Phillips, Notary Public. My commission expires July 5th, 1903."

On the same day the Honorable John R. Thomas issued an extradition warrant, directing the said Dickson to be turned over to the agent appointed by the governor of Arkansas, to which defendant excepted. On the same day defendant filed a motion for a new trial, which was overruled by the court, to which ruling defendant excepted, and prayed an appeal to this court.

*Twine & Lowrey* and *Marcum, Bailey & Owen*, for appellant.

TOWNSEND, J. The appellant has filed four specifications of error, which are as follows: "Specifications of error: (1) The court erred in not discharging the petitioner because no authenticated copy of indictment charging the appellant with murder in the first degree was annexed to the requisition. (2) The court erred in holding that the certificate of the governor of Arkansas was sufficient authentication of the paper annexed to the requisition. (3) The court erred in refusing to permit the petitioner to introduce evidence to prove that he was not a fugitive from the justice of Arkansas. (4) The court erred in denying the petition of the appellant and honoring the requisition, because he was without power under the law and constitution, to honor the requisition for the extradition of the petitioner."

The statute of the United States under which the requisition for this appellant was issued is as follows: "Section 5278. Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within six months from the time of arrest, the prisoner may be discharged. All costs or expenses, incurred in the apprehending, securing and transmitting such fugitive to the state or territory making such demand shall be paid by such state or territory." Rev. St. U. S. p. 1022, § 5278.

Appellant's counsel cite the case of Ex Parte Hart, 11 C. C. A. 165, 63 Fed. 249, 28 L. R. A. 801, as follows: " 'The governor of Washington caused a requisition to be issued in which is recited that "it appears by a copy of indictment, which is herewith annexed, and which I certify to being authentic, and duly authenticated," etc. On examination of the papers annexed we find that no such copy of indictment is attached. The absence of the copy of indictment is fatal to the validity of the warrant.' " The foregoing quotation, by itself, is misleading. It appears from an examination of the case that the governor of Washington on the 23d day of December, 1893, issued a

requisition on the governor of Maryland, based upon an information, as follows: "Wherein it appears by a copy of information which is hereunto annexed, and which I certify to be authentic," etc.; and on December 27, 1893, the governor of Washington issued another requisition on the governor of Maryland for the same party, which recited as follows: "Whereas, it appears by a copy of indictment which is hereunto annexed, and which I certify to be authentic," etc. It appears from an examination of the papers attached to both of said requisitions that each were based on an information filed by the prosecuting attorney, and that there was no "copy of indictment" attached to either requisition. The court in said case also says: "The governor of the state of Washington evidently reached the conclusion that the requisition made by him on the 23d of December, 1893, was defective, for we find that he caused another to be issued on the 27th day of December, 1903, in which it is recited that "it appears by a copy of indictment, which is herewith annexed, and which I certify to be authentic and duly authenticated in accordance with the laws of this state, that Samuel H. Hart stands charged with the crime of larceny by embezzlement,' etc. On examination of the papers annexed, we find that no such copy of indictment is attached, but that the copy of an information filed by the prosecuting attorney on the 27th day of December, 1893, against said Hart, is filed with and made part of the papers with the requisition. The absence of the copy of the indictment is fatal to the validity of the warrant, which does not pretend to be founded on the copy of information nor of affidavit, but of the indictment alone. The copy of the information does not support the requisition, and, if it did, for the reasons heretofore given, would not be sufficient. * * * We find that the requisitions issued by the governor of the state of Washington did not comply with the law, and that the governor of the state of Maryland was not furnished with a copy of either an indictment or affidavit made

as required by section 5278 of the Revised Statutes of the United States, and consequently we hold that the warrant of removal is void." The foregoing is not the case at bar, as an indictment is attached to the requisition in this case, as required by said section 5278, and the court simply holds that the requisition may be examined to ascertain if said act of congress has been complied with. In the case of Ex parte Thornton, 9 Tex. 635, the only question decided was that the warrant issued by the governor of Texas was not sufficient to hold the prisoner, for the reason that it did not show that it was based on a requisition of the governor of Arkansas, "accompanied with a copy of an indictment found," etc., as follows: "Hemphill, C. J. The relator insists on his discharge on the ground of the insufficiency and illegality of the warrant in this: that it does not show by recital that the representation and demand of the governor of the state of Arkansas was accompanied with a copy of an indictment with a copy of an indictment found, or an affidavit made before some magistrate of the state of Arkansas, certified to by the said executive as being duly authenticated, and charging the relator with having committed the crime of forgery within the said state; and we are of opinion that, on the ground set forth, he is entitled to his discharge." It has no bearing on the case at bar whatever. The language of the act of congress is that the governor issuing the requisition must produce "a copy of an indictment found or an affidavit made, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor." In this case there is a copy of an indictment charging the appellant with a crime, and certified as authentic by the governor. This complied with the statute, as it expressly authorizes the governor to make the certificate required, and it disposes of the first two assignments of error.

The alleged error in the third specification is that the court refused to allow petitioner to introduce evidence that he was not

a fugitive from justice. We think that whether or not he was a fugitive from justice is a question of fact, as stated by Justice Matthews in Roberts vs Reilly, 116 U. S. 80, 6 Sup. Ct. 291, 29 L. Ed. 544, and in the same case the learned judge decides what it is to be a fugitive from justice: "To be a fugitive from justice, in the sense of the act of congress regulating the subject under consideration, it is not necessary that the party charged should have left the state in which the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding a prosecution anticipated or begun, but simply, that having within a state committed that which by its laws constitutes a crime, when he is sought to be subjected to its criminal process to answer for his offense he has left its jurisdiction, and is found within the territory of another." Roberts vs Reilly 116 U. S. 97, 6 Sup. Ct. 291, 29 L. Ed. 544. In Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148, 29 L. Ed. 250, Justice Harlan said: "In other words, the appellant was entitled under the act of congress, to insist upon proof that he was within the demanding state at the time he is alleged to have committed the crime charged, and subsequently withdrew from her jurisdiction, so that he could not be reached by her criminal process. The statute, it is to be observed, does not prescribe the character of such proof; but that the executive authority of the territory was not required, by the act of congress, to cause the arrest of appellant, and his delivery to the agent appointed by the governor of Pennsylvania, without proof of the fact that he was a fugitive from justice, is, in our judgment, clear from the language of that act." It appears from the petition of appellant as follows: "That your petitioner is a native of the state of Arkansas; that he was born and reared in Calhoun county, in said state, and is now twenty-five years of age; that he emigrated from said county and state to the Creek Nation in 1897, and has resided in said nation ever since." It appears from the indictment attached to the requisition that the crime charged was

committed in July, 1895, and it thus appears by appellant's own admission that he was a resident of Arkansas at the date of the commission of the crime, and had subsequently removed to the Creek Nation. It appears that some proof was also taken before the court at the hearing of this application as follows: "Q. State your name, residence, and occupation. A. W. H. Furlow, sheriff and collector of Calhoun county, Arkansas. Q. Are you the person who is appointed agent of the governor in this requisition? A. Yes, sir. Q. Are you acquainted with the defendant, John Dickson? A. Yes, sir. Q. Is this defendant, who is in the custody of Leo E. Bennett, United States marshal of this district, the same person who is charged with crime of being accessory to the crime of murder, the same party who is here? A. Yes, sir. Q. Is he to be tried for murder in your county? A. Yes, sir. Q. How long have you known him? A. Ever since he was a small boy. Q. What is his real name? A. John Dickinson. Q. How do you spell it? A. Dickinson. Q. When did he leave Arkansas? A. He left Arkansas about three or four years ago. I don't know for certain just when he did leave. He has been gone some three or four years, though. Q. Was he in Calhoun county at the time this indictment was filed? A. I am not able to say about that, sure. Q. The 16th of July, 1896. How long have you been sheriff of that county. A. A year. Q. Have you searched for this man? A. Yes, sir. Q. Did you ever find him in that state of Arkansas? A. No, sir. Q. Is this the first time you have obtained any trace of his whereabouts? A. This is the first time. Q. Did you know the party who was killed? A. Yes, sir. Q. As a resident of that county, were you familiar with the facts and history of the crime? A. Yes, sir. Q. And this is the identical person? A. That is the man." The foregoing evidence was sufficient, in our judgment to satisfy the court that appellant was a fugitive from justice and disposes of the third assignment of error.

Appellant, for his fourth assignment of error, insists that the court was without power, under the law and constitution, to honor the requisition of the governor of Arkansas. The act of congress of May 2, 1890, § 41, provides as follows: "Sec. 41. That the judge of the United States court in the Indian Territory shall have the same power to extradite persons who have taken refuge in the Indian Territory, charged with crimes in the states or other territories of the United States, that may now be exercised by the governor of Arkansas in that state, and he may issue requisition upon governors of states and other territories for persons who have committed offenses in the Indian Territory, and who have taken refuge in such states or territories." Ind. Ter. St. 1899, p. 13, § 41. And the act under which Judge Thomas was appointed gave him all the power conferred upon the other judges, and was to hold court wherever assigned by order of the court of appeals. We cannot agree with appellant's counsel as to the power of congress in the territories. Under article 4, § 3, of the constitution of the United States, it is provided that "the congress shall have power to dispose of, and make all needful rules and regulations respecting the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state."

We are of the opinion that the judgment of the court below was correct, and it is therefore affirmed.

GILL, C. J. In the above-entitled case I dissent from the opinion of the court, and from its conclusion.

The first specification of error says that, because no authenticated copy of the indictment charging the appellant with murder in the first degree was annexed to the requisition, the court erred in not discharging the petitioner. And the second specification says that the court erred in holding that the cer-

tificate of the governor of Arkansas was a sufficient authentication of the paper annexed to the requisition.

Section 5278 of the Revised Statutes of the United States is as follows: "Sec. 5278: Whenever the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled, and produces a copy of the indictment found, or an affidavit made before a magistrate of any state or territory charging the person demanded with having committed treason, felony or other crime, certified by or authenticated by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand, or to the agent of such authority appointed to receive the fugitive, and to cause the fugitive to be delivered to such agent when he shall appear." An analysis of section 5278 shows: First, that, when the executive authority of any state or territory demands any person as a fugitive from justice of the executive authority of any state or territory to which such person has fled, he must, second, produce a copy of the indictment found, or an affidavit made before the magistrate of such demanding state or territory, which, third, must charge the person demanded with having committed treason, felony or other crime, and which, fourth, must be certified as authentic by the demanding governor or chief magistrate of the state or territory whence the person so charged has fled, and, fifth, it shall then be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making demand, or the agent of such authority, and, sixth, to cause the fugitive to be delivered to the agent of such executive authority when he shall appear.

The demand is, in words and figures, as follows:

"State of Arkansas, Executive Department. The Governor of the State of Arkansas. To His Excellency, the Judge of the U. S. Court for the Northern District, Ind. Ter.: Whereas, it appears by the annexed papers, which I certify to be authentic and duly authenticated in accordance with the laws of this state, that John Dickinson stands charged by indictment with the crime of murder in the first degree, committed in the county of Calhoun, in this state, which I certify to be a crime under the laws of this state, and that he has fled from this state, and is a fugitive from the justice thereof, and it is believed such fugitive has taken refuge in the Indian Territory: Now, therefore, I, Daniel W. Jones, governor, of the state of Arkansas, pursuant to the provisions of the constitution and laws of the United States do hereby make requisition for the apprehension of the said fugitive, and for his delivery to W. H. Furlow, who is hereby authorized to receive and convey him to the state of Arkansas, here to be dealt with according to law. In testimony whereof, I have hereunto set my hand and caused to be affixed the great seal of the state of Arkansas. Done at Little Rock this 20th day of October in the year of our Lord one thousand eight hundred and ninety-nine, of the Independence of the United States the one hundred and twenty-fourth, and of this state the sixty-fourth. Dan'l. W. Jones, Governor. Alex. C. Hull, Secretary of State. By the Governor, by E. R. Jett, Deputy Secretary. (Seal.)

Accompanying this demand is the following paper:

"In Calhoun County Court. The State of Arkansas vs John Dickinson, Defendant. The grand jury of Calhoun County, in the name of and by the authority of the state of Arkansas, accuse John Dickinson of the crime of accessory before the fact of murder, committed as follows, to wit: That one Wiley Brown

on the 2nd day of July, 1895, in Calhoun county, Arkansas, did unlawfully, feloniously, wilfully, with malice aforethought, and with premeditation and deliberation, assault, kill, and murder one Allen Martin by shooting him with a gun, with intent to kill and murder the said Allen Martin then and there; that the said John Dickinson, before the said murder as aforesaid was committed,—that is to say, on the 2nd day of July, 1895,— in Calhoun County, Arkansas, did unlawfully, feloniously, wickedly, willfully, with malice aforethought, and with premeditation and deliberation knowingly advise, incite, encourage, aid and abet the said Wiley Brown the said murder as above described to commit and do, against the peace and dignity of the state of Arkansas.   H. P. Laird."

It will be noticed that there is no certified copy of the indictment attached to the demand but it appears in the demand itself that the annexed papers (that is, the foregoing paper or indictment) are certified by the governor of the state to be authentic, and he further certifies that they are duly authenticated in accordance with the laws of Arkansas.   It will also be noticed that the indictment itself is signed by one H. P. Laird, without further designation of who said Laird is.   But the following notes appear upon the indictment:

"No. 217 (A301).   The State of Arkansas vs John Dickinson. Indictment before the Fact of Murder.   A true bill.   J. D. Hanna, Foreman.

"Filed in open court in the presence of all the grand jury on this 16th day of July 1896.   T. N. Means, Clerk.   (Call Geo. W. Dickinson.   T. N. Means.)"

Indorsed as follows:

"Filed 11–4–'99.   By N. C. Young, D. C.   J. A. Winston, Clerk."

The question as to whether or not this was a copy of the indictment, within the sense of the law, was specifically presented to the honorable trial judge, who held that the governor certified to the indictment which seemed to be the original indictment, and stated that that was sufficient authentication. The United States statute, it will be seen by the foregoing analysis, requires that a copy of an indictment charging the person demanded shall be certified by the governor of the demanding state as authentic. Shall it then be said that the original indictment, which is a part of the record to be retained in the office of the clerk of the court where the indictment is found, and concerning which the governor of the state can know nothing, ordinarily, except as the same is certified by the clerk, shall serve the same purpose as an authenticated copy, where the demanding governor certifies the same to be authentic and to be duly authenticated? The indictment in this case appears to be signed by one H. P. Laird, but who he is or what he is does not appear. Presumably, he was the prosecuting attorney. The indictment seems to bear upon its back the legal indorsement as to its being a true bill, to be signed by the foreman, and filed in open court in the presence of the grand jury by the clerk of the court. The demanding governor does not certify that it is the original indictment; nor does he, or anybody else, certify that it is a copy of the original indictment. It is not intended by the statute that the demanding governor shall send with his demand the original indictment itself, but it is intended by the statute that the demanding governor shall send with his demand an authenticated copy of the indictment. In the case at bar there is nothing to show whether this is the original or a copy; nor is there any further authentication of the paper than the words of the governor, "Whereas, it appears by the annexed papers, which I certify to be authentic and duly authenticated in accordance with the laws of this state." There certainly is no authentication of the only paper that appears

(33)

with the demand, and the governor states that at the time he issued the demand the paper before him, on which the demand was made, was duly authenticated. How was the trial court to know, or how is this court to know, that the paper bearing the heading of the "State of Arkansas vs John Dickinson, Defendant," was the paper presented to the governor of the state of Arkansas? I may presume that it was the paper, but certainly there is nothing on the paper to show that the governor of Arkansas ever saw it, and, unless the demand is accompanied by a copy of the indictment found, there is no authority vested in the magistrate upon whom the demand is made to honor the demand; and for this reason I am inclined to think that the honorable trial judge erred in not remanding the prisoner until the proper papers could be secured.

It is my opinion that the judgment of the sitting magistrate should be so modified as to require an authenticated copy of the indictment to accompany the demand of the demanding governor in this case.