(100 App. Div. 483)

PEOPLE ex rel. HAMILTON v. POLICE COM'R. OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 13, 1905.)

1. EXTRADITION—REGULARITY OF PROCEEDINGS.
   The warrant of the Governor, authorizing the extradition of a person charged with an offense in another state, is prima facie evidence that all the essential prerequisites have been observed; and, if the proceedings appear to be regular, such presumption becomes conclusive of the right to extradite the person so charged.

2. SAME—HABEAS CORPUS—SUFFICIENCY OF INDICTMENT.
   On habeas corpus for discharge of a person arrested for extradition, the court will not inquire into the sufficiency of the indictment where it apparently charges an offense; the determination of its sufficiency being the duty of the tribunals of the state in which the offense is alleged to have been committed.

3. SAME.
   An indictment alleged that defendant, intending to cheat and defraud the prosecutors of their goods, moneys, and property, represented that he was a member of the firm of H.; that they were the owners of a large quantity of valuable property, and were the owners of accounts and obligations in large amounts, which were due and coming to them, and that they were possessed of ample means to pay and redeem certain described notes; that such representations were false; and that, by means thereof, defendant obtained the signatures of the prosecutors to be indorsed on such notes, which were payable to defendant's firm, with intent to cheat and defraud. Held, under the statute of Pennsylvania making it a misdemeanor to obtain the signature óf any person to a written instrument by a false pretense, or to obtain from any person any chattel, money, or valuable security with intent to cheat or defraud, sufficient to show an offense, so as to warrant the extradition of defendant.

Appeal from Special Term, New York County.

Proceedings on habeas corpus in the name of the people, on the relation of John A. Hamilton, against the police commissioner of the city of New York. From an order sustaining the writ and directing the discharge of relator, the people appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Robert S. Johnstone, for the People.
Moses H. Grossman, for respondent.

HATCH, J. The relator, John A. Hamilton, was arrested and taken into custody by the police commissioner of the city of New York on the 29th day of April, 1904, by virtue of a rendition warrant issued by the Governor of the state of New York upon a requisition from the Governor of the state of Pennsylvania. Upon the day of the relator's arrest he sued out a writ of habeas corpus, and was brought before the court. The police commissioner duly made return to the writ, setting forth the executive warrant as his authority for the detention. To this return the relator filed a traverse, to which were annexed copies of the requisition of the Governor of Pennsylvania, and the papers accompanying the same, upon which the rendition warrant had been issued. Several de-

¶ 1. See Extradition, vol. 23, Cent. Dig. § 46.

fects were claimed by the relator to exist in the proceedings, among which was the one now relied upon—that the indictment accompanying the requisition did not charge the relator with any crime. The learned court below held that the indictment was insufficient, and made an order directing that the writ be sustained, and the relator be discharged from custody. From this order the people have appealed.

It seems to be well settled that the warrant of a Governor of a state, authorizing the extradition of a person charged with an offense against the laws of a sister state, is prima facie evidence that all essential legal prerequisites have been observed; and if the proceedings, when produced, appear to be regular, such presumption becomes conclusive evidence of the right to extradite the person charged with the offense. Davis' Case, 122 Mass. 324. It is possible that an indictment forming the basis for the application for a warrant of rendition may be so faulty as to charge no offense, and the court be authorized to conclude that it was not made to appear that any crime had been committed. People ex rel. Lawrence v. Brady, 56 N. Y. 182. It is evident, however, that, before the court in the jurisdiction granting the warrant will be justified in holding an indictment bad, an extreme case would be required, and one wherein no other rational conclusion could be reached. It is settled by numerous authorities that the court will not inquire into the sufficiency of an indictment in such proceeding where it apparently charges an offense. When such is the case, its sufficiency as a good pleading is to be determined solely by the judicial tribunals of the foreign state. It was said by Chief Justice Taney in Commonwealth of Kentucky v. Dennison, 24 How. (U. S.) 107, 16 L. Ed. 717:

"Kentucky has an undoubted right to regulate the forms of pleadings and process in her own courts in criminal as well as civil cases, and is not bound to conform to those of any other state. And whether the charge against Lago is legally and sufficiently laid in this indictment, according to the laws of Kentucky, is a judicial question, to be decided by the courts of the state, and not by executive authority of the state of Ohio."

The same principle was announced in Ex parte Reggel, 114 U. S. 642, 651, 5 Sup. Ct. 1148, 29 L. Ed. 250; In re Roberts (D. C.) 24 Fed. 132. In the Davis Case, supra, it was said:

"When an indictment appears to have been returned by a grand jury, and is certified as authentic by the Governor of the other state, and substantially charges a crime, this court cannot, on habeas corpus, discharge the prisoner because of formal defects in the indictment; but the sufficiency of the charge, as a matter of technical pleading, is to be tried and determined in the state in which the indictment was found."

In the present case all of the formal requisites seem to have been observed. The indictment is authenticated by the executive of Pennsylvania; is certified by the district attorney of Jefferson county and by the clerk of the court of quarter sessions, in which court the indictment is purported to have been found by the grand inquest of the commonwealth of Pennsylvania. It is beyond question that the indictment itself purports to charge the crime of false pretenses. Every essential requisite is therefore made to appear,

upon which to found the charge that the relator has committed within the state of Pennsylvania an indictable offense. Under these circumstances, the court will not search the indictment in order to determine whether it is in any sense technically defective, but will remit such question for determination by the courts of Pennsylvania. See People ex rel. Corkran v. Hyatt, 172 N. Y. 176–193, 64 N. E. 825, 60 L. R. A. 774, 92 Am. St. Rep. 706.

Aside from this question, however, it is not clearly apparent wherein this indictment is bad. It consists of two counts, the first of which charges that the relator, intending to cheat and defraud the Sykes Woolen Mill Company of their goods, moneys, and chattels and property, represented that he was a member of the firm of Charles H. Hamilton & Co.; that they were the owners of a large quantity of valuable property in the city of New York, and were the owners of accounts and obligations in large amounts which were due and coming to them; and that they were possessed of ample means to pay and redeem two certain promissory notes therein described. The indictment then negatives the representations, alleges that they were false, and then avers that by means of the false pretenses the relator obtained the signature of the Sykes Woolen Mill Company and G. W. Sykes to be indorsed upon the promissory notes, which were payable to the order of Charles H. Hamilton & Co., with intent to cheat and defraud. By the provisions of section 111 of the statute of Pennsylvania it is provided:

"If any person shall, by any false pretense, obtain the signature of any person to any written instrument, or shall obtain from any other person, any chattel, money or valuable security, with intent to cheat and defraud any person of the same, every such offender shall be guilty of a misdemeanor," etc.

The offense which this statute would seem to create is not alone that of obtaining the chattels, money, or valuable security with intent to defraud, or of obtaining a written instrument with like intent, but also with obtaining the signature of a person to a written instrument with intent to cheat and defraud. This count of the indictment charges that the indorsements were obtained to be made upon a promissory note to the order of Charles H. Hamilton & Co., and that they obtained the signatures of the particular persons to be placed thereon with intent to cheat and defraud. The averment would therefore seem to state an offense within the provisions of the statute. If this count be bad, the second count would seem to be clearly good. After making substantially the same averments as in the first count with respect to the intent to cheat and defraud, the representations, and the obtaining of the indorsements upon the promissory notes, it charges that by these acts the relator "thereby then and there" cheated and defrauded "the said Sykes Woolen Mill Company and the said G. W. Sykes and Harry J. Sykes out of the amount of said note, to wit, out of the sum of twenty-five hundred ($2,500) dollars, with intent to cheat and defraud," etc. This count of the indictment not only charges that indorsements were obtained upon the promissory

notes, but that thereby he not alone intended to cheat and de-fraud, but did cheat and defraud, the named parties out of a speci-fied sum of money. This count of the indictment is full and com-plete with respect to the character of the representations, the pur-pose for which they were made, the fact that they were false, and the result, which was that the parties were cheated and defraud-ed by these acts out of a sum of money. If, therefore, we had before us the sufficiency of this indictment charging the offense of false pretenses under the Pennsylvania statute, we should have little hesitancy in reaching the conclusion that the indictment charged an offense within the statute defining that crime. Commonwealth v. Sober, 15 Pa. Super. Ct. 520.

These views lead to the conclusion that the order should be re-versed, and the relator remanded to the custody of the commis-sioner of police, to be delivered up in accordance with the command of the rendition warrant. All concur.