VAN BRUNT, P. J., O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred.

Decree modified as stated in opinion, and as modified affirmed, without costs.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN A. HAMILTON, Respondent, *v.* THE POLICE COMMISSIONER OF THE CITY OF NEW YORK, Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant.

*Extradition of a person on the requisition of a Governor of another State — presumption that all essential legal requisites have been observed — the court will hold otherwise only in an extreme case — if the indictment apparently charges an offense it is sufficient.*

The warrant of a Governor of a State, authorizing the extradition of a person charged with an offense against the laws of a sister State, is *prima facie* evidence that all essential legal prerequisites have been observed, and if the proceedings, when produced, appear to be regular, such presumption becomes

conclusive evidence of the right to extradite the person charged with the offense.

While it is possible that an indictment forming the basis of an application for a warrant of rendition may be so faulty as to charge no offense, and render it improper for the Governor to issue the warrant, yet before the court will be justified in reaching such a conclusion an extreme case must be presented and one wherein no other rational conclusion can be reached.

If the indictment apparently charges an offense the court will not inquire into the sufficiency thereof, but will leave that matter for the determination of the judicial tribunal of the foreign State.

APPEAL by The People of the State of New York from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 16th day of June, 1904, sustaining a writ of habeas corpus theretofore issued herein, and directing that the relator be discharged from custody.

*Robert S. Johnstone*, for the appellant.

*Moses H. Grossman*, for the respondent.

HATCH, J.:

The relator, John A. Hamilton, was arrested and taken into custody by the police commissioner of the city of New York on the 29th day of April, 1904, by virtue of a rendition warrant issued by the Governor of the State of New York upon a requisition from the Governor of the State of Pennsylvania. Upon the day of the relator's arrest he sued out a writ of habeas corpus and was brought before the court. The police commissioner duly made return to the writ, setting forth the executive warrant as his authority for the detention. To this return the relator filed a traverse, to which were annexed copies of the requisition of the Governor of Pennsylvania and the papers accompanying the same, upon which the rendition warrant had been issued. Several defects were claimed by the relator to exist in the proceedings, among which was the one now relied upon; that the indictment accompanying the requisition did not charge the relator with any crime. The learned court below held that the indictment was insufficient, and made an order directing that the writ be sustained and the relator be discharged from custody. From this order the People have appealed.

It seems to be well settled that the warrant of a Governor of a State authorizing the rendition of a person charged with an offense against the laws of a sister State is *prima facie* evidence that all essential, legal prerequisites have been observed, and if the proceedings, when produced, appear to be regular, such presumption becomes conclusive evidence of the right to extradite the person charged with the offense. (*Davis's Case*, 122 Mass. 324.) It is possible that an indictment forming the basis for the application for a warrant of rendition may be so faulty as to charge no offense, and the court be authorized to conclude that it was not madé to appear that any crime had been committed. (*People ex rel. Lawrence* v. *Brady*, 56 N. Y. 182.) It is evident, however, that before the court in the jurisdiction granting the warrant will be justified in holding an indictment bad, an extreme case would be required, and one wherein no other rational conclusion could be reached. It is settled by numerous authorities that the court will not inquire into the sufficiency of an indictment in such proceeding where it apparently charges an offense. When such is the case, its sufficiency as a good pleading is to be determined solely by the judicial tribunals of the foreign State. It was said by Chief Justice TANEY in *Commonwealth of Kentucky* v. *Dennison* (24 How. [U. S.] 107): "Kentucky has an undoubted right to regulate the forms of pleading and process in her own courts, in criminal as well as civil cases, and is not bound to conform to those of any other State. And whether the charge against Lago is legally and sufficiently laid in this indictment according to the laws of Kentucky is a judicial question to be decided by the courts of the State, and not by the executive authority of the State of Ohio." The same principle was announced in *Ex parte Reggel* (114 U. S. 642, 651), and in *Matter of Roberts* (24 Fed. Rep. 132). In the *Davis Case* (*supra*) it was said: "When an indictment appears to have been returned by a grand jury and is certified as authentic by the Governor of the other State, and substantially charges a crime, this court cannot, on habeas corpus, discharge the prisoner because of formal defects in the indictment; but the sufficiency of the charge as a matter of technical pleading is to be tried and determined in the State in which the indictment was found." In the present case all of the formal requisites seem to have been observed. The indictment is authen-

486   PEOPLE ex rel. HAMILTON *v.* POLICE COM'R.

First Department, January, 1905.                    [Vol. 100.

ticated by the executive of Pennsylvania, is certified by the district attorney of Jefferson county and by the clerk of the Court of Quarter Sessions, in which court the indictment is purported to have been found by the grand inquest of the Commonwealth of Pennsylvania. It is beyond question that the indictment itself purports to charge the crime of false pretenses. Every essential requisite is, therefore, made to appear upon which to found the charge that the relator has committed within the State of Pennsylvania an indictable offense. Under these circumstances the court will not search the indictment in order to determine whether it is in any sense technically defective, but will remit such question for determination by the courts of Pennsylvania. (See *People ex rel. Corkran* v. *Hyatt*, 172 N. Y. 176, 193.) Aside from this question, however, it is not clearly apparent wherein this indictment is bad. It consists of two counts, the first of which charges that the relator, intending to cheat and defraud the Sykes Woolen Mill Company of their goods, moneys and chattels and property, represented that he was a member of the firm of Charles H. Hamilton & Co., that they were the owners of a large quantity of valuable property in the city of New York and were the owners of accounts and obligations in large amounts which were due and coming to them, and that they were possessed of ample means to pay and redeem two certain promissory notes therein described. The indictment then negatives the representations, alleges that they were false and then avers that by means of the false pretenses the relator obtained the signature of the Sykes Woolen Mill Company and G. W. Sykes to be indorsed upon the promissory notes, which were payable to the order of Charles H. Hamilton & Co., with intent to cheat and defraud. By the provisions of section 111 of chapter 374 of the Laws of Pennsylvania of 1860 it is provided : "If any person shall, by any false pretence, obtain the signature of any person to any written instrument, or shall obtain from any other person, any chattel, money or valuable security, with intent to cheat and defraud any person of the same, every such offender shall be guilty of a misdemeanor," etc. The offense which this statute would seem to create is not alone that of obtaining the chattels, money or valuable security with intent to cheat and defraud, or of obtaining a written instrument with like intent, but also with obtaining the signature of a

person to a written instrument with intent to cheat and defraud. This count of the indictment charges that the indorsements were obtained to be made upon a promissory note to the order of Charles H. Hamilton & Co., and that the relator obtained the signatures of the particular persons to be placed thereon with intent to cheat and defraud. The averment would, therefore, seem to state an offense within the provisions of the statute. If this count be bad the second count would seem to be clearly good. After making substantially the same averments as in the first count with respect to the intent to cheat and defraud, the representations and the obtaining of the indorsements upon the promissory notes, it charges that by these acts the relator " thereby then and there " cheated and defrauded " the said Sykes Woolen Mill Co. and the said G. W. Sykes and Harry J. Sykes out of the amount of said note, to wit, out of the sum of twenty-five hundred ($2500) dollars, with intent to cheat and defraud," etc. This count of the indictment not only charges that indorsements were obtained upon the promissory notes, but that thereby he not alone intended to cheat and defraud, but did cheat and defraud the named parties out of a specified sum of money. This count of the indictment is full and complete with respect to the character of the representations, the purpose for which they were made, the fact that they were false and the result, which was that the parties were cheated and defrauded by these acts out of a sum of money. If, therefore, we had before us the sufficiency of this indictment charging the offense of false pretenses under the Pennsylvania statute we should have little hesitancy in reaching the conclusion that the indictment charged an offense within the statute defining that crime. (*Commonwealth* v. *Sober*, 15 Penn. Super. Ct. 520.)

These views lead to the conclusion that the order should be reversed and the relator remanded to the custody of the police commissioner, to be delivered up in accordance with the command of the rendition warrant.

Van Brunt, P. J., O'Brien, Ingraham and McLaughlin, JJ., concurred.

Order reversed and relator remanded.